IRMA JONES HUNT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 104903. Promulgated October 7, 1942.

*Murray B. Jones, Esq.*, for the petitioner.
*Frank B. Schlosser, Esq.*, for the respondent.

834

OPINION.

BLACK: The first issue we have to decide is what was petitioner's basis of cost of the undivided one-half interest in property which she sold on January 1, 1936, to T. P. Lee and his daughters for $200,000. The Commissioner in his computation of profit on this sale has treated the gains as capital gains and has taken into account the percentages provided by section 117 of the Revenue Act of 1936. Both parties are in agreement that this method is correct and, therefore, there is no issue on that score.

The parties are, however, in disagreement as to the basis which is to be used in computing petitioner's capital gain from the sale. The Commissioner in his determination of the deficiency has used $136,-159.25 as the basis for her undivided interest in the property. The petitioner contends for a basis of $190,159.25 if the two basic dates of her acquisition are March 1, 1913, and December 1919, or $212,159.25 if the basic dates of acquisition are 1919, 1924, and 1925.

If the Board should determine that petitioner's contention for the latter basis of $212,159.25 is correct, then that would decide the proceedings in petitioner's favor and there would be no need to decide the other questions which have been raised by petitioner's numerous assignments of error. However, we are unable to agree, for reasons presently explained, that petitioner is correct in claiming a basis of $212,159.25 for her interest in the property. Therefore, in the light of the pleadings and the evidence, we must decide what basis for petitioner's undivided interest should be used in the computation of her capital gain or loss on the sale in question. We need only determine this basis in so far as the land alone is concerned, since the parties have stipulated that the depreciated basis of an undivided one-half interest in the improvements on the property at the time of the sale on January 1, 1936, was the amount of $36,159.25.

The material provisions of section 113 of the Revenue Act of 1936, the act in force when the sale in question was made, are set out in the margin.[1]

[1] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

(2) GIFTS AFTER DECEMBER 31, 1920.—If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift * * *.

We have set out in our findings the manner in which petitioner and her brother, Murray B. Jones, each acquired an undivided one-half interest in the property in question.

The basis of the undivided one-half interest in lots 1, 2, and 3 acquired by petitioner as a gift from her mother on December 22, 1919, is the fair market value of such property at the time of such acquisition. Sec. 113 (a) (4), *supra*.

The basis of the undivided one-fourth interest in lots 6, 7, 8, 12, and part of 11 acquired by petitioner under her father's will is the fair market value of such property at the time of the death of the decedent (1902) or as of March 1, 1913, whichever is greater. Sec. 113 (a) (5) and (14), *supra;* cf. *Fidelity & Columbia Trust Co.* v. *Commissioner*, 90 Fed. (2d) 219; certiorari denied, 302 U. S. 723. No evidence was offered as to the 1902 value, but this is not fatal because it would be material only if it were greater than the March 1, 1913, value. Petitioner has made no contention for a 1902 value as a basis. The basis of the undivided one-fourth interest in lots 6, 7, 8, 12, and part of 11 acquired by petitioner as a gift on January 1, 1924, is the same as it would be in the hands of petitioner's mother on that date. Sec. 113 (a) (2), *supra.* Petitioner's mother owned as her separate property an undivided one-half interest in lots 6, 7, 8, 12, and part of 11 on March 1, 1913. She made a gift of this undivided one-half interest to her two children, petitioner and Murray B. Jones, on January 1, 1924. As to this undivided one-fourth interest petitioner likewise makes no contention that the cost or other basis provided for in subdivision (a) of section 204, *supra*, is greater than the fair market value of such property as of March 1, 1913. Therefore, adding the two undivided one-fourth interests together, the basis of an undivided one-half interest in lots 6, 7, 8, 12, and part of 11 in the hands of petitioner on October 31, 1932, is the fair market value of such one-half interest as of March 1, 1913.

Upon the basis of the evidence, we have found that the fair market value of an undivided one-half interest in lots 6, 7, 8, 12, and part of 11 as of March 1, 1913, exclusive of improvements, was the amount of $92,400, and that the fair market value of an undivided one-half

---

(4) Gift or transfer in trust before January 1, 1921.—If the property was acquired by gift or transfer in trust on or before December 31, 1920, the basis shall be the fair market value of such property at the time of such acquisition.

(5) Property transmitted at death.—* * * If the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition. * *

(14) Property acquired before March 1, 1913.—In the case of property acquired before March 1, 1913, if the basis otherwise determined under this subsection, adjusted (for the period prior to March 1, 1913) as provided in subsection (b), is less than the fair market value of the property as of March 1, 1913, then the basis for determining gain shall be such fair market value. * * *

interest in lots 1, 2, and 3 on December 22, 1919, exclusive of improvements, was the amount of $38,500. These two amounts, plus the stipulated depreciated basis of an undivided one-half interest in the improvements in the amount of $36,159.25, all of which totals $167,059.25, represent the adjusted cost basis to petitioner. We, therefore, hold that the adjusted basis to petitioner of the property sold was the amount of $167,059.25 and that the respondent erred in determining that the adjusted basis was the amount of $136,159.25.

Petitioner's next assignments of error raise the question whether ad valorem taxes paid in 1936 on her separate real estate, attorney fees paid for legal services by petitioner in the tax reduction suit which she brought against the city of Houston, Texas, and interest paid by petitioner in 1936 on her separate indebtedness, all constitute deductible expenses to her in determining her net income. Petitioner's contention on this point in her brief is stated thus:

Where wife's separate real estate was sold by her January 1, 1936, there were no rents and revenues collected by wife during income tax taxable year of 1936, and, therefore, no community income from said separate real estate to furnish a basis for dividing these deductions one-half to petitioner and one-half to her husband, W. C. Hunt.

The facts show that in 1936, in connection with the sale of her undivided one-half interest in the property to T. P. Lee and his daughters, petitioner had to pay to the city of Houston, Texas, the sum of $18,270.18 taxes. These taxes covered the years 1933, 1934, and 1935 against petitioner's interest in the property. Petitioner also paid $1,500 interest on the mortgage indebtedness which was against her undivided one-half interest in the property. Petitioner also paid $1,543 as attorney fees to her attorney for securing an adjustment of her tax liability to the city of Houston, Texas, in the tax litigation which had been brought against that city. Petitioner in her income tax return took these several amounts as deductions from her gross income.

The Commissioner in his determination of the deficiency put these three foregoing deductions on the community property basis and allowed one-half of them to petitioner and the other one-half to petitioner's husband, W. C. Hunt, determining an overassessment of taxes as to him for the year 1936. The Commissioner in explaining his action in this respect, stated in his deficiency notice, as follows:

Inasmuch as both income and expenses of separate property constitute community property the items of $18,270.18 representing local taxes paid in 1936, and $1,543.00 representing attorneys' fees paid in 1936 for securing an adjustment of the foregoing tax liability, have been treated as community expenses. Accordingly, half of each item, or $9,135.09 and $771.50, respectively have been allowed as deductions from your income for 1936.

The Commissioner made substantially the same statement with reference to the $1,500 item of interest described above.

Respondent relies in his brief, as authority for dividing these three deductions and allowing one-half of them to petitioner and one-half of them to petitioner's husband, upon *Mellie Esperson Stewart*, 35 B. T. A. 406; affd., 95 Fed. (2d) 821. In that case we held, among other things, that under the Texas Community Property Law husband and wife are each taxable upon one-half of the net community income after the deduction of the allowable expenses incident to its production. In that case, in making our holding, we said, among other things:

* * * As Corpus Juris states the principle, citing *Sharp* v. *Zeller*, 110 La. 61; 34 So. 129:

Where separate property is encumbered, the revenue therefrom may be applied to the discharge of the encumbrance, leaving only the excess to fall into the community. * * *

In accordance with this principle, the respondent has consistently computed the income of the spouses by including in the net income of each, one-half of the net community income, thus giving each, equally, the benefit of the deductions properly attributable to such income. As far as we have been able to find, no question has been raised heretofore as to this treatment. The usual method pursued was to have each spouse report all of the community income, and the deductions therefrom, and then include in his or her individual income, one-half of the net amount so computed. The rule consistently applied is stated by O. D. 909, 4 C. B. 254, as follows:

In returns in which community income is divided between husband and wife domiciled in States where such income is divisible for income tax purposes, both husband and wife should report in detail the gross income from such community property. The deductions properly chargeable against such income should be equally divided between husband and wife.

We then proceeded in the *Stewart* case to approve O. D. 909 quoted above, and to apply it to the particular facts of that case. The difficulty of applying our holding in the *Stewart* case to the three claimed deductions above described in the instant case, as respondent claims should be done, is that the facts of the instant case are not the same as they were in the *Stewart* case. In the *Stewart* case the community income from the wife's separate property exceeded the deductions applicable to such separate property and there was resulting net community income from the property, which was divided one-half to the husband and one-half to the wife. In the instant case in the taxable year there was no community income from the property in question. It was sold on January 1, 1936, and, therefore, there were no rents to fall into the community for that year. The profits, if any, from the sale of the property were separate income to petitioner. Both sides agree on that. The taxes which were paid, amounting to $18,270.18, were petitioner's own taxes, for which she was personally liable, and they were a lien against her property. See arts. 7171 and 7172, Vernon's Texas Statutes.

Section 23 (c) of the Revenue Act of 1936 allows to a taxpayer a deduction for taxes paid or accrued within the taxable year. Petitioner was on the cash basis and under the circumstances of this case we think she is entitled to the deduction which she claims for the taxes paid in 1936. What we have said as to taxes we think applies in equal degree to the $1,500 interest which petitioner paid in 1936. This interest was paid on her separate indebtedness. The principal of the indebtedness and the interest due thereon were a lien against petitioner's separate property and had to be satisfied in the consummation of the sale which is involved here. Therefore, we think the entire amount of this interest was deductible to petitioner in the taxable year under section 23 (b) of the Revenue Act of 1936.

The next item among this group of three items which the Commissioner has split into two parts is $1,543 fees, which petitioner paid for legal services rendered by her attorney in the tax suit against the city of Houston, Texas, to secure a downward adjustment in the taxes against her separate property. The Commissioner has not disallowed one-half of this deduction to petitioner on the ground that it was not an ordinary and necessary business expense. No such issue is raised by the Commissioner. His sole ground of disallowance to petitioner of one-half of this deduction was that it was a community deduction and as such should be divided one-half to petitioner and one-half to her husband.

Under Texas law, where a debt was contracted by a wife or by her authority and was for the benefit of her separate estate, she and her separate estate were bound therefor. *Teel* v. *Blair*, 128 S. W. 478; *Dockery* v. *Johnston*, 299 S. W. 505. See also sec. 179, Speer's Law of Marital Rights in Texas.

In view of these Texas authorities we sustain petitioner's contention as to these attorney fees and hold that the Commissioner erred in allowing only one-half of them as a deduction to petitioner. We next take up adjustment (e) as shown by the Commissioner in his deficiency notice. The Commissioner explained this adjustment in a statement attached to the deficiency notice as follows:

The deduction of $244.75, representing ½ of $489.50, that was claimed by you as commissions on purchases and sales of stock has been adjusted by including those commissions paid on sales in the computation of the loss of $203.00 from sale of stocks related above. The balance of the deduction represents commissions on purchases of securities. They are part of the purchase price and are not deductible as expenses. *Helvering* v. *Winmill*, 305 U. S. 79, 59 S. Ct. 45.

Computation of the adjustment, item (e), is shown as follows:

| | |
|---|---|
| Attorney fees claimed | $1,543.00 |
| Attorney fees allowed (½ of $1,543.00) | 771.50 |
| Adjustment | 771.50 |

| | |
|---|---:|
| Commissions on stock purchases and sales, disallowed as expense (½ of $489.50) | $244. 75 |
| Commission on sale of your separate property | 4, 000. 00 |
| Revenue stamps on sale of your separate property | 200. 00 |
| | |
| Total adjustment | 5, 216. 25 |

We have already disposed of the item of attorney fees which is mentioned in the Commissioner's adjustment (e) shown above, along with items (c), interest, and (d), taxes, of the deficiency notice. The next item in (e) is $244.75 disallowed as expenses. These were commissions paid by petitioner in the purchases of stocks and taken as a deduction on her income tax return. It is clear that petitioner was not a dealer in securities and that the Commissioner's treatment of this item was proper under *Helvering* v. *Winmill*, 305 U. S. 79. As to this item the Commissioner is sustained.

The next item in (e) is the disallowance as a deduction of $4,000 commissions which petitioner paid a real estate agent in the sale of her one-half interest in the property in question. The Commissioner, instead of treating this item of $4,000 as a separate deduction to petitioner in computing net income, disallowed it as a separate deduction and deducted it from the selling price of the real estate in computing petitioner's gain thereon. The Commissioner in his brief cites *Spreckels* v. *Commissioner*, 315 U. S. 626, as his authority for this treatment.

We do not think the *Spreckels* case is in point. It dealt with a specific Treasury regulation which deals with commissions paid in selling securities. That regulation has no application here.

Petitioner's assignment of error as to the Commissioner's method of treating this $4,000 is as follows:

Respondent erred in considering commission on sales of real estate in the amount of $4,000.00 representing commission paid for sale of separate property as a deduction from purchase price, whereas the same should be allowed as a separate business expense and, therefore, deductible in its entirety.

If petitioner had proved that she was engaged in the real estate business there might be merit in her contention as above made, but there is no proof whatever that during the taxable year petitioner was engaged in the real estate business. We know of no statute which would entitle her to take the deduction as a separate deduction, unless she was engaged in the real estate business. We think the Commissioner's method of offsetting the sale price of the property by the amount of these real estate commissions was the correct one, under the facts we have here. Cf. *Mrs. E. A. Giffin*, 19 B. T. A. 1243.

We think the Commissioner erred in treating the $200 stamp taxes which petitioner paid on the execution of her deed of the property to the purchasers as an offset to the price received for the property

sold. These were taxes paid in the sale of her separate property and petitioner is entitled to deduct them in determining net income, under the provisions of section 23 (c) of the Revenue Act of 1936.

Petitioner's last assignment of error is that the Commissioner erred in not crediting the overassessment of $138.96 which he determined in favor of petitioner's husband, W. C. Hunt, to the deficiency determined against petitioner. This assignment of error is not sustained. Petitioner and her husband were two different taxpayers. Each filed separate returns, as they had a right to do. There is no authority in law for the Commissioner to credit any tax liability due by petitioner with an overassessment due to her husband. *H. B. Perine*, 22 B. T. A. 201; *Robert C. Roebling*, 28 B. T. A. 644.

*Decision will be entered under Rule 50.*