Isabel Méndez Ríos, demandante y apelada, *v.* Secretario de Hacienda de Puerto Rico, demandado y apelante.

Número 11012.

*Sometido:* 1 de junio de 1954. *Resuelto:* 9 de agosto de 1954.

*Hon. Secretario de Justicia José Trías Monge y Manuel J. Medina Aymat, Procurador Auxiliar,* abogados del apelante; *Jorge de la Cruz Figueroa,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

Esta apelación envuelve una notificación hecha a la demandante, en el año 1950, por el entonces Tesorero de Puerto Rico, en cuanto a una alegada deficiencia de contribuciones sobre ingresos con respecto al año 1944. Los hechos incontrovertidos son los siguientes:

En el año 1944 la demandante, Isabel Méndez Ríos, estaba casada con Clemente Santisteban. Este último presentó una declaración (*return*) al Tesorero, con respecto a los ingresos en el año 1944, en que declaró un ingreso neto total de $31,432.02 como percibido, en conjunto, por él y su esposa, la aquí demandante. Pagó una contribución sobre ingresos de $9,185.69. En su declaración Santisteban hizo constar, bajo juramento, que en el último día del año contributivo de 1944 estaba casado y vivía con su esposa Isabel Méndez Ríos. El día 21 de febrero de 1947 la anterior Corte de Distrito de San Juan dictó una sentencia decretando el divorcio entre Santisteban y la contribuyente, resolviendo que se había establecido la causal de separación de las partes durante un período mayor de tres años consecutivos. Esto es, de acuerdo con la sentencia, ellos no vivieron juntos durante la totalidad del año contributivo en cuestión, el 1944. El mismo día 21 de febrero de 1947, Isabel Méndez Ríos y Santisteban, divorciados ya, otorgaron una escritura de liquidación y partición de bienes gananciales.

El 19 de junio de 1950 el Tesorero notificó a la demandante que se había determinado una deficiencia contributiva, en cuanto a los ingresos que había obtenido en el año 1944 la sociedad de bienes gananciales entonces existente entre ella y Santisteban, cuya deficiencia contributiva ascendía en total a $10,133.38. Esa deficiencia no ha sido impugnada en cuanto a su cuantía. El Tesorero notificó a la demandante que ella debía pagar al erario público la mitad de esa deficiencia de la sociedad conyugal, o sea, la suma de $5,066.69 (mitad de $10,133.38), bajo la teoría de que al disolverse la sociedad de bienes gananciales cada cónyuge debe responder por la mitad de las deudas contributivas de la sociedad conyugal ya disuelta. Santisteban pagó su mitad correspondiente, de $5,066.69, pero no así la demandante, quien impugnó la deficiencia notificada de $5,066.69 ante el anterior Tribunal de Contribuciones, alegando ella en la demanda que Santisteban debía pagar la totalidad de la deficiencia de

$10,133.38. En la vista del caso ante el tribunal a quo, la contribuyente alegó además que ella estaba separada de su esposo durante el año 1944, según quedaba demostrado por la sentencia de divorcio a que ya hemos hecho referencia, que fué presentada y admitida en evidencia.

El 10 de noviembre de 1952 la Sala de San Juan del Tribunal Superior dictó una opinión y sentencia en que resolvió que la contribuyente estaba obligada a satisfacer su parte correspondiente (la mitad) de la deficiencia contributiva de la anterior sociedad de bienes gananciales y que Santisteban no estaba obligado a pagar la totalidad de la deficiencia, pero que, en vista de que los cónyuges no vivían juntos en el año 1944, bajo la sec. 24 de nuestra Ley de Contribuciones sobre Ingresos, según tal sección quedó enmendada por la Ley núm. 31 de 1941 ((1) pág. 479), ella tenía derecho a rendir una declaración de ingresos separada e individual, resolviéndose que "Clemente Santisteban pagó una cantidad de impuestos que era en exceso de lo que correspondía satisfacer, en conjunto, en relación con los ingresos de cada uno de los esposos por separado," debiendo el Secretario de Hacienda acreditar a la demandante el exceso pagado por Santisteban. La sentencia dictada fué la siguiente:

"Por los fundamentos expuestos en la opinión que precede, se declara sin lugar la demanda *en la forma en que la misma ha sido redactada;* y se ordena al Tesorero que haga nueva determinación, tomando en consideración tanto el derecho de la contribuyente a rendir su planilla individual de ingresos como la cantidad que, a nombre de esta última, se hubiera pagado en exceso, en el año 1945, con relación al año 1944. El Tesorero registrará los nuevos cálculos en nuestra secretaría, dentro del plazo de veinte (20) días, que se contará a partir de la fecha de la notificación de esta sentencia."

Dentro del plazo señalado de veinte días el Secretario de Hacienda presentó ante el tribunal sentenciador el cómputo requerido. Señaló un ingreso neto total de la sociedad conyugal para el año 1944 de $45,127.82 ($31,432.02 informado

originalmente por Santisteban más $13,695.80 adicionales según la investigación del Tesorero, no impugnándose esa cuantía en esta apelación). En el cómputo se le imputó a la demandante la mitad de ese ingreso neto, o sea, el haber recibido, a fines contributivos, la suma de $22,563.91, reduciendo de esa suma la de $800 en concepto de exención personal, imponiéndose la contribución sobre el ingreso neto así reducido de $21,763.91, produciendo ello una contribución de $5,800.85. A tal suma se le redujo entonces, o se acreditó, la mitad de la contribución ya pagada en el año 1945 por Santisteban, o sea, $4,592.84, mitad de $9,185.69, ya pagadas por Santisteban, quedando una deficiencia de $1,208.01, a cuya suma se le añadió un 25% de la contribución (25% de $5,800.85), como penalidad por no haber rendido ella su declaración individual y separada para el año 1944, montando ese 25% a la suma de $1,450.21, a ser añadido a la deficiencia de $1,208.01.

Posteriormente, la demandante radicó una impugnación a ese cómputo, alegando que (1) "la deuda, si alguna, que representan dichos cómputos es deuda de la sociedad de gananciales, y no de Isabel Méndez Ríos" y que (2) la deficiencia total de ambos cónyuges era de $10,601.70, y habiendo ya Santisteban pagado la suma total de $14,252.38 ($9,185.69 pagados por él en el año 1945 más $5,066.69 pagados por él en el año 1950), el Secretario ya había cobrado una suma en exceso de la contribución total de $10,601.70 reclamada por él. El tribunal de San Juan resolvió que no era procedente la primera alegación de la demandante, en cuanto a la responsabilidad exclusiva de la sociedad de gananciales ya que ello envolvía el planteamiento de una cuestión de derecho, ajena a la esfera de acción de un cómputo, pero el tribunal a quo resolvió que, en vista de los pagos "en exceso" hechos por Santisteban el Secretario de Hacienda tenía en su poder una suma en exceso de $3,858.69, que debería acreditar a la demandante. Se ordenó al Secretario que radicase un nuevo cómputo y éste así lo hizo, a base de que la contribuyente no

adeudaría contribución alguna de aceptarse la última resolución del tribunal. El tribunal aprobó el nuevo cómputo. El Secretario de Hacienda apeló entonces, en tiempo, a este Tribunal de la sentencia y de la resolución relativa al cómputo, y ha señalado los siguientes errores:

"1. Erró el tribunal inferior al resolver que la demandante-apelada no venía obligada a pagar la mitad de la deuda contributiva de la sociedad legal de gananciales disuelta.

"2. Erró el tribunal inferior al resolver que don Clemente Santisteban 'pagó una cantidad de impuestos que era en exceso de la que le correspondía satisfacer, en conjunto, en relación con los ingresos de cada uno de los esposos por separado'.

"3. Erró el tribunal inferior al declarar con lugar la impugnación a los cómputos radicados por el demandado apelante, no obstante admitir dicho tribunal que los cómputos 'desde el punto de vista matemático, están correctamente hechos'."

El primer problema que surge en este litigio se refiere a la virtualidad de la declaración única y conjunta presentada por Santisteban en el año 1945, en representación de la sociedad de bienes gananciales, con respecto a los ingresos del año 1944. Se plantea una controversia en cuanto al derecho o la obligación de la contribuyente de rendir una planilla por separado, al no vivir juntos los cónyuges durante el año 1944. La sec. 24 de nuestra Ley de Contribuciones sobre Ingresos, tal como fué enmendada por la Ley núm. 31 de 12 de abril de 1941, (no siendo aplicable a este caso la enmienda hecha de esa sección por la Ley núm. 150 de 1949 ((1) pág. 403), dispone lo siguiente:

"Sección 24.— (a) Cada uno de los siguientes individuos deberá presentar una declaración bajo juramento demostrando específicamente las partidas de su ingreso bruto y las deducciones y créditos admisibles a virtud de este título.

"(1) Todo individuo que tenga un ingreso neto por el año contributivo de $800 o más, si fuere soltero o si fuere casado y no viva con su esposo o esposa.

"(2) Todo individuo que tenga un ingreso neto por el año contributivo de $2,000 o más, si es casado o vive con su esposo o esposa; y

"(3) Todo individuo que tenga un ingreso bruto por el año contributivo de $5,000 o más sin considerar el montante de su ingreso neto.

"(b) Si un esposo y esposa que viven juntos tienen un ingreso neto por el año contributivo de $2,000 o más, o unidos tienen un ingreso bruto durante dicho año contributivo de $5,000 o más, el ingreso total de ambos deberá ser incluído en una sola declaración conjunta, debiendo computarse la contribución normal y adicional sobre el ingreso en conjunto. El ingreso neto o bruto recibido por uno de los cónyuges no podrá ser dividido entre ambos cónyuges."

En este caso se demostró al tribunal de primera instancia que el 21 de febrero de 1947 se dictó una sentencia de divorcio en que se declaró disuelto el vínculo matrimonial que unía a la contribuyente y a Santisteban, por la causal de separación, resolviéndose y declarándose que ellos habían estado separados por tres años consecutivos, incluyendo la totalidad del año 1944. Tal sentencia equivalía a un pronunciamiento de que los cónyuges no habían vivido juntos durante el año 1944. Cf. *Godreau* v. *Guerrero*, 68 D.P.R. 88; *Cabrer* v. *Pietri*, 67 D.P.R. 437; *Miranda* v. *Padró*, 66 D.P.R. 130; *Cot* v. *Emanuelli*, 64 D.P.R. 649; *Simonet* v. *Sandoval*, 63 D.P.R. 523; *Núñez* v. *López*, 62 D.P.R. 567. Por lo tanto, al ellos no vivir juntos durante el año 1944, no era aplicable el inciso (b) de la sec. 24, y no existía obligación alguna de incluir el ingreso total de ambos en una sola declaración conjunta, no debiendo entonces computarse la contribución normal y adicional sobre el ingreso en conjunto. Por el contrario, la contribuyente estaba obligada a cumplir con el inciso (a)(1) de la sec. 24, debiendo ella haber presentado una declaración separada, ya que ella tuvo un ingreso neto de más de $800 y era casada y no vivía con su esposo. Tal conclusión es una consecuencia necesaria de los términos taxativos y categóricos de la sec. 24. Estamos conscientes del postulado de derecho sustantivo al efecto de que los ingresos obtenidos durante la existencia de un matrimonio pueden constituir bienes gananciales, aun si los cónyuges viven sepa-

rados al obtenerse los ingresos, no necesitándose la cohabitación para que los ingresos sean considerados como gananciales, ya que la sociedad de gananciales no queda disuelta, y la esposa no pierde su derecho a participar en los bienes adquiridos, por el hecho en sí de la separación. *Martínez Llonín* v. *Fernández*, 47 D.P.R. 587; Scaevola, tomo 22, pág. 67, 68, 69. No debe haber margen para preocupaciones judiciales o para especulaciones filosóficas en cuanto a la integridad o naturaleza conjunta de los ingresos gananciales no obstante la separación, ya que la sec. 24, al referirse a la obligación de presentar planillas separadas cuando los cónyuges no vivan juntos, no aumenta ni disminuye los derechos de propiedad sustantivos de los cónyuges, sino que sencillamente establece un método práctico y concreto de declarar y calcular la contribución. Véanse los casos de *Ballester* v. *Tribunal de Apelación*, 61 D.P.R. 474 y *Buscaglia, Tes.* v. *Tribunal de Apelación*, 62 D.P.R. 436, en donde se formula esa misma observación en cuanto a la disposición prevaleciente antes de la Ley núm. 31 de 1941, en cuanto a la opción concedida a los cónyuges para presentar planillas separadas. En el caso de *Buscaglia, Tes.* v. *Tribunal de Apelación*, supra, se indica: "Ratificamos nuestra opinión de que la Legislatura de Puerto Rico tenía y tiene autoridad para exigir que los cónyuges presenten sus planillas de ingresos, bien conjunta o separadamente, y que al hacerlo en una u otra forma no establece regla de propiedad alguna."

Independientemente del hecho de que cae dentro de las facultades de la Legislatura el establecer el requisito de planillas separadas cuando los cónyuges no vivan juntos, tal exigencia no es arbitraria ni caprichosa y puede tener fundamentos de razonabilidad, ya que, en el campo de los hechos concretos y de las realidades, más allá del conceptualismo rígido y dogmático, una esposa que no viva junto a su esposo probablemente no recibiría la totalidad de los beneficios de los ingresos del otro cónyuge. Cf. *Ballester* v. *Tribunal de Apelación*, supra, a las págs. 484 y 486.

En·el caso de *Pueblo* v. *Franceschi*, 74 D.P.R. 825, 833, se alegó, en apelación, que el contribuyente no vivía junto con su esposa durante el año contributivo en cuestión, surgiendo tal extremo de una sentencia de divorcio. Pero tal caso es distinto al de autos. Allí se trataba de un proceso criminal en que se alegaba que el acusado intentó evadir al pago de contribuciones. Se indicó que la alegación que hemos mencionado no constituía una adecuada y suficiente, especialmente en vista de que "durante el juicio celebrado en el tribunal a quo él no alegó que la planilla rendida lo hubiera sido de conformidad con las secs. 18 y 24 de la Ley de Contribuciones sobre Ingresos, es decir, como persona casada que no vive con su esposa y que se divorció durante el año contributivo."

Se ha resuelto en los Estados Unidos que, en aquellos Estados donde prevalece el sistema de bienes gananciales y en donde los cónyuges tienen la opción de presentar una planilla conjunta o planillas separadas, el ejercicio de tal opción o elección mediante la presentación de una planilla conjunta es obligatorio para los cónyuges, estando ellos impedidos posteriormente de presentar planillas separadas en sustitución de la conjunta. *United States* v. *Pettigrew*, 81 F.2d 666; *O'Rourke* v. *Commissioner*, 81 F.2d 668; *Binder* v. *Welch*, 107 F.2d 812; *Safety Electric Products Co.* v. *Helvering*, 70 F.2d 439; Mertens, *Law of Federal Income Taxation*, vol. 8, pág. 559, sec. 47.11. Tal regla está predicada en el deseo de evitar dificultades en la determinación correcta de la contribución adeudada, con los inconvenientes administrativos correspondientes. *Rose* v. *Grant*, 39 F.2d 340, 341. Sin embargo, tal regla, aunque podía haber sido aplicable en Puerto Rico bajo la legislación anterior a la Ley núm. 31 de 1941, en virtud de cuya legislación anterior los esposos tenían la opción o facultad de elección en cuanto a presentar planillas conjuntas o separadas, no·es aplicable bajo las enmiendas introducidas a la sec. 24 en el año 1941, ya que en virtud de la sec. 24 vigente, los cónyuges no tienen

tal opción. Se establecen dos categorías o requisitos separados e independientes, que dan lugar a dos obligaciones independientes, esto es, planillas conjuntas cuando los cónyuges vivan juntos, y planillas separadas cuando ellos no vivan juntos. De cumplirse con una de esas dos modalidades surge la obligación correspondiente que no puede ser excusada mediante el cumplimiento de la otra obligación que corresponde a la otra modalidad. Esto es, de no vivir juntos los cónyuges, el requisito único es el de presentar planillas separadas, y no conjuntas, siendo legalmente inefectiva la planilla conjunta. No se trata de un caso de opción o elección entre dos requisitos alternativos, sino de un caso de dos requisitos independientes, colocados cada uno en su respectiva esfera de acción. El cumplimiento innecesario e ineficaz de un requisito bajo una situación de hechos que no requiera tal cumplimiento, no debe servir de impedimento para que se corrija la actuación errónea por la actuación que exige la ley bajo tal situación de hechos.

En vista de lo expuesto, la contribuyente estaba obligada a presentar una planilla separada con respecto al año 1944, y la planilla conjunta presentada por Santisteban carecía de virtualidad y eficacia. La situación envuelta parte del supuesto de que no se haya radicado planilla alguna para el año 1944. El cómputo de la deuda contributiva de la demandante debe determinarse de acuerdo con los ingresos obtenidos por la sociedad de bienes gananciales en el 1944, según la reliquidación hecha por el Tesorero en el año 1950, cuya cuantía de ingresos no se impugna, y de acuerdo con la responsabilidad que corresponda a la demandante bajo una planilla separada, de ella misma. La contribución adeudada por ella sería aquélla a ser impuesta si ella hubiese radicado una planilla separada. Desde otro punto de vista, la suma a ser pagada por la contribuyente debe medirse por la responsabilidad correspondiente de un cónyuge, después de la disolución del matrimonio y después de la liquidación de la

sociedad de gananciales, con respecto a deudas de la sociedad de gananciales que estén pendientes de pago.

Las cuestiones relativas a los derechos y obligaciones de los cónyuges que forman una sociedad de bienes gananciales, con respecto a los ingresos y deudas gananciales, deben ser determinadas de acuerdo con el derecho sustantivo local. 3 Mertens, sec. 19.01, pág. 3, nota 2, y casos ahí citados; *Comm. Int. Rev.* v. *King*, 69 F.2d 639. El art. 1295 de nuestro Código Civil, establece los elementos esenciales de la sociedad de gananciales, al disponer lo siguiente:

"Artículo 1295.—Mediante la sociedad de gananciales, el marido y la mujer harán suyos, *por mitad*, al disolverse el matrimonio, las ganancias o beneficios obtenidos indistintamente por cualquiera de los cónyuges durante el mismo matrimonio." (Bastardillas nuestras.)

El derecho de cada cónyuge a la mitad de los ingresos gananciales constituye un postulado básico del sistema de bienes gananciales bajo el derecho civil. 22 Scaevola 19, et seq., en donde se discute la historia del concepto del derecho de cada cónyuge a la mitad de los ingresos, desde "las costumbres de los pueblos germánicos, conservadas por los godos, cuyas mujeres al principio, dejados sus antiguos asientos y moradas, seguían constantemente a sus maridos en paz y en guerra, y así como arrostraban los trabajos y peligros, así era justo que entrasen también a la parte del fruto de aquellos afanes", en contraste con "las sencillas castellanas recluídas a la sombra de sus almenas, endulzando el recuerdo de los maridos ausentes con la sana emoción de la lectura de las 'Cantigas'", hasta el avance y desarrollo del sentimiento de igualdad. A la pág. 21 se indica que la división por mitad de las ganancias es base y esencia de la institución de los gananciales. A la pág. 41 se indica que el concepto fundamental, dominante y típico de la sociedad de gananciales consiste en la división por partes iguales. Véase además 9 Manresa 718, 5ta. ed. revisada. Sobre el derecho de cada cónyuge a la mitad de las ganancias véanse los casos

de *Vega* v. *Cía. Popular de Transporte*, 72 D.P.R. 525, una vez se haya decretado el divorcio; *Rossy* v. *Registrador*, 23 D.P.R. 553; *Fabián* v. *Registrador*, 25 D.P.R. 899; *Hernández* v. *Sucn. Córdova*, 32 D.P.R. 296; *Maldonado* v. *Rodríguez*, 58 D.P.R. 778.

Es cierto que el art. 1295 se refiere al derecho a la mitad de las ganancias una vez se haya disuelto el matrimonio. La contribución aquí envuelta se refiere a las ganancias obtenidas en el año 1944, antes de haberse disuelto el matrimonio. Es innecesario el considerar, a los fines del problema envuelto en este caso, la naturaleza del derecho de un cónyuge antes de la disolución del vínculo matrimonial, si es un derecho latente, o un derecho adquirido o una mera esperanza. Lo esencial es que el derecho se mide por una cuantía que corresponde a una mitad de las ganancias, a tono con el sistema básico del derecho civil. Existiendo la obligación de cada cónyuge de radicar una planilla separada, debe suponerse que las ganancias se distribuyan por partes iguales entre ambos cónyuges. Precisamente, cuando existía en Puerto Rico, antes del 1940, y en donde existe en otras jurisdicciones en que impera el sistema de bienes gananciales, el derecho opcional a presentar planillas separadas, la planilla individual de cada cónyuge debería contener la mitad de las ganancias de la sociedad de gananciales. *Casals* v. *Sancho Bonet*, 53 D.P.R. 640, 649; 3 Mertens 5, 6, sec. 19.01, y casos allí citados, especialmente los casos de *Poe* v. *Seaborn*, 282 U. S. 101; *Goodell* v. *Koch*, 282 U. S. 118; *Hopkins* v. *Bacon*, 282 U. S. 122; *Bender* v. *Pfaff*, 282 U. S. 127; *United States* v. *Malcolm*, 282 U. S. 792; *Berkowitz* v. *Comm.*, 108 F.2d 319, en donde se discuten los puntos de vista de algunos tratadistas sobre el sistema de bienes gananciales.

De todos modos, en el caso de autos la sociedad de gananciales quedó disuelta en virtud del divorcio entre las partes, (*Vega* v. *Tossas*, 70 D.P.R. 392), y se practicó la liquidación de la sociedad de gananciales. Surgió, por lo tanto,

en forma concreta, el derecho de la demandante a la mitad de las ganancias. *Vega* v. *Cía. Popular de Transporte*, supra; *Maldonado* v. *Rodríguez*, supra; *Fabián* v. *Registrador*, supra.

Desde otro punto de vista, de ordinario las contribuciones constituyen deudas de la sociedad de gananciales. 9 Manresa 604, 694, 695, 5ta. ed. revisada; 22 Scaevola 246, en donde se indica que las contribuciones constituyen una condición precisa y necesaria para el objeto de la utilidad obtenida. Al disolverse el matrimonio, y al practicarse la liquidación, las deudas gananciales deben pagarse, en primera instancia, de los bienes gananciales. Arts. 1319 y 1320 del Código Civil; 9 Manresa 694, 695, 696; 22 Scaevola 264, 265, 267. Después de disolverse el matrimonio y de practicarse la liquidación, sin haberse pagado las deudas contributivas, como ha ocurrido en el caso de autos, cada cónyuge debe pagar la mitad de la contribución sobre ingresos adeudada, siendo tal postulado una consecuencia lógica del principio de igualdad en el disfrute de las ganancias. 3 Mertens 70, sec. 19.42; *Commonwealth* v. *King*, supra; *Minnie Felber* v. *Comm. Int. Rev.*, 45 B.T.A. 197. La responsabilidad de cada cónyuge por el pago de tal deuda contributiva debe ser mancomunada. El art. 1298 determina que la sociedad de gananciales se regirá por las reglas del contrato de sociedad en todo aquello en que no se opongan a lo expresamente determinado por este capítulo. Bajo el art. 1589 del mismo cuerpo legal, la responsabilidad de los socios por las deudas sociales es mancomunada, y no solidaria, de acuerdo con la participación de cada socio. 11 Manresa 406, 5ta. ed. revisada; Cf. *Earle* v. *Comm. Int. Rev.* 38 F.2d 965; *Anne Jacobs* v. *Comm.*, 7 T. C. 1481.

Fué correcta la sentencia dictada por el tribunal a quo, al ella ser reflejo de los principios que hemos señalado en esta opinión, esto es, a tono con la reliquidación de los ingresos gananciales hecha en el año 1950, cuya nueva liquidación ha sido aceptada como correcta, y tomando como base

el supuesto obligado de que cada cónyuge hubiese radicado una planilla separada, la responsabilidad contributiva de cada cónyuge, esto es, de la demandante, se debe determinar por su derecho a recibir la mitad de los ingresos recibidos por la sociedad de gananciales, según esos ingresos fueron reliquidados en el año 1950. También fué enteramente correcto el primer cómputo sometido por el Secretario de Hacienda, en cumplimiento de la sentencia. El demandado, Secretario de Hacienda, señaló la cantidad de $45,127.82 como representativa de los ingresos gananciales totales en el año 1944, y atribuyó válidamente la mitad de esos ingresos ($22,563.91) a la contribuyente, restando de esa suma la de $800 como exención personal, correspondiente a un cónyuge que no viva junto con el otro cónyuge, según la sec. 18 de la ley. Se impuso la contribución, ascendente a $5,800.85, sobre la suma de $21,763.91. El Secretario de Hacienda acreditó entonces a la contribución señalada de $5,800.85 la mitad de la suma de $9,185.69 que había sido ya pagada, indebidamente, en concepto de contribución por Santisteban en el año 1945, quedando así una deficiencia de $1,208.01. Ese fué un procedimiento correcto del demandado ya que, siendo la responsabilidad contributiva de la contribuyente una función de la mitad de los ingresos gananciales, a ella también debía acreditársele la mitad de la suma pagada indebidamente por Santisteban en representación de la sociedad de gananciales, cuando aún no se había disuelto el matrimonio. A la deficiencia de $1,208.01 se añadió entonces la suma de $1,450.21 en concepto de penalidad impuesta a la contribuyente por no haber presentado una declaración separada de ingresos en el año 1945, con respecto al año contributivo de 1944. Tal penalidad no ha sido impugnada ante nos por la contribuyente.

Habiendo sido correcto el primer cómputo radicado por el Secretario de Hacienda, fué errónea la resolución del tribunal sentenciador de 13 de febrero de 1953, en que se ordenó al demandado que radicase nuevos cálculos. Resolvió el tri-

bunal a quo que habiendo ya pagado Santisteban al erario público la suma total de $14,252.38 ($9,185.69 pagados en el año 1945 más $5,066.69 pagados en el año 1950), el Secretario de Hacienda había recibido una suma en exceso de las contribuciones adeudadas por ambos cónyuges, debiendo acreditarse el exceso a la deficiencia final impuesta a la. demandante, con el resultado de que la demandante no debería contribución alguna al erario público. La extensión de tal crédito en virtud del pago de $14,252.38 no fué cuestión que surgiese de las alegaciones originales de las partes, ni fué objeto de resolución por el tribunal de primera instancia al dictar su sentencia. Pero en vista de que ambas partes fueron oídas en cuanto a tal extremo en la vista que se celebró con relación a la impugnación al primer cómputo, en cuya impugnación se planteó tal alegación en cuanto al supuesto pago en exceso, consideraremos los méritos de la cuestión planteada. Cf. *González Padín* v. *Tribunal de Distrito*, 66 D.P.R. 964.

El pago de $14,252.38, que se alega que implica un pago en exceso que debe ser acreditado a la demandante, se descompone en dos partidas. La primera es la de $9,185.69 pagados en el año 1945. Esa partida ha quedado neutralizada o prácticamente borrada, sin consecuencias efectivas, por el hecho de que al hacerse el primer cómputo de acuerdo con la sentencia, a la contribución a ser pagada por la demandante se le acreditó la mitad de ese pago. La otra mitad se le hubiese acreditado a Santisteban si él hubiese planteado alguna contención sobre el particular, y, por lo tanto, tal pago de $9,185.69 ya fué debidamente considerado al presentarse el primer cómputo. La segunda partida es la de $5,066.69 pagados por Santisteban en el año 1950. Él hizo tal pago después de la disolución del matrimonio y de la liquidación de la sociedad de gananciales, en pago de su participación, o de su mitad individual, de la supuesta deuda contributiva de la sociedad de gananciales, después de haberse hecho la reliquidación de los ingresos por el Tesorero. Santisteban no

pagó los $5,066.69 en representación de la sociedad de gananciales, la cual ya había dejado de existir. El pagó tal suma en su propia representación individual, como contribuyente separado e independiente de la demandante. Ello es especialmente cierto en virtud de los postulados que ya hemos señalado, en cuanto al derecho y obligación de rendir planillas separadas de los cónyuges, que no vivían juntos al obtenerse los ingresos, lo que determina la responsabilidad individual y separada de cada uno de los cónyuges, por una mitad de las ganancias. Por lo tanto, si Santisteban pagó en exceso de lo que a él le correspondía individualmente, era cuestión que afectaba a Santisteban exclusivamente, y que él nunca planteó, y no debe favorecer a la demandante, considerada como contribuyente individual, ni reducir su responsabilidad. Un pago en exceso hecho por un contribuyente, en su carácter individual, no puede ser invocado como crédito por otro contribuyente independiente. Tal regla es aplicable al pago hecho por un esposo, cuando paga en su capacidad individual. 10 Mertens 370, sec. 58.36; *Irma Jones Hunt*, 47 B.T.A. 829.

Concentrando nuestra atención sobre la demandante, lo cierto es que a la contribución a ser pagada por ella se le concedió el crédito que correspondía, o sea, la mitad de los $9,185.69 que habían sido pagados por el esposo en representación de la sociedad de gananciales. En vista de lo expuesto, fué errónea la resolución del tribunal a quo del 13 de febrero de 1953, siendo enteramente correcto el primer cálculo radicado por el Secretario de Hacienda en cumplimiento de la sentencia ya dictada.

*Debe confirmarse la sentencia dictada por el tribunal a quo el 10 de noviembre de 1952 y debe revocarse la resolución dictada por ese tribunal el 13 de febrero de 1953, debiendo devolverse el caso a la Sala de San Juan del Tribunal Superior para que allí se sigan los procedimientos que no sean incompatibles con esta opinión.*