**TOWANDA TEXTILES, INC.,**
v.
**UNITED STATES.**
No. 468–57.

United States Court of Claims.
Feb. 3, 1960.

Bernard Weiss, New York City, for plaintiff.

Theodore D. Peyser, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant.

James P. Garland and Lyle M. Turner, Washington, D. C., were on the brief.

WHITAKER, Judge.

This is a suit for the refund of an alleged overpayment of Federal income taxes for the plaintiff's tax year ending June 30, 1956. The record presents two legal issues which may be briefly summarized as follows:

Plaintiff was in voluntary liquidation when fire destroyed some of its property. The amount received from the insurance on the property exceeded the base thereof for the purpose of ascertaining gain or loss. The first question presented is whether the gain derived therefrom comes within the provisions of section 337 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 337, which reads:

"*Gain or loss on sales or exchanges in connection with certain liquidations*

"(a) *General rule.*—If—

"(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

"(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period."

The second question is whether legal and adjuster fees incurred in the collection of insurance proceeds from such involuntary conversion should be treated as ordinary and necessary business expenses, or as a capital expenditure incurred in the realization of the gain therefrom.

1. On September 9, 1955, plaintiff, through its board of directors, adopted a plan of complete liquidation, which was to be carried out within a year, whereby it was to sell all its assets and distribute the proceeds to its stockholders. Three days later, on September 12, 1955, plaintiff's principal manufacturing plant was destroyed by fire. The insurance proceeds therefrom amounted to $294,948.73, resulting in a gain of $174,668.65, but, in the collection of these proceeds, plaintiff incurred attorney fees and insurance adjuster fees amounting to $18,251.78. Shortly thereafter, plaintiff sold its remaining assets sustaining a capital loss of $13,221.56. On January 4, 1956, in furtherance of its plan of liquidation, it distributed the net proceeds to its stockholders, except for certain amounts retained to meet claims for accrued expenses and taxes.

The Commissioner of Internal Revenue, in determining plaintiff's income tax for the year of liquidation, included in plaintiff's income as capital gain the difference between the amount recovered under its insurance policy and the adjusted tax basis of the destroyed property, reduced by the attorney and adjuster fees incurred in collecting the insurance proceeds; but, on the other hand, he denied plaintiff the right to deduct the loss which plaintiff suffered by the sale of its other capital assets. He ruled that an involuntary conversion was not a sale or exchange of property within the meaning of section 337, but that the loss on the sale of the other assets did come within the terms of the section and could not be recognized.

The section should not be given a construction so illogical, not to say unjust, unless its language makes it imperative. We think it is an erroneous construction.

Prior to the enactment of the 1954 Internal Revenue Code, controversies were numerous over whether a sale of a corporation's assets on liquidation was made by the corporation or by the stockholders to whom the assets were allegedly distributed by the corporation before the sale. In many cases, if not in all, the Commissioner of Internal Revenue asserted that the sale had been made by the corporation before liquidation, and

that it was liable for the gain derived therefrom, and that the stockholders were also liable for a tax on the proceeds of the sale, as if it had been distributed by the corporation as a liquidating dividend.

The question of the liability of the corporation for the tax on the gain was first presented to the Supreme Court in Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981, and later in United States v. Cumberland Public Service Co., 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251. In the Court Holding Company case, the Court affirmed the finding of the Tax Court that the sale had been made by the corporation, and that it was liable for the tax, although the corporation had formally distributed to its stockholders the property sold. This resulted in a tax on the gain against the corporation, and also in a tax on the gain against the stockholders when the gain was distributed to them in the form of a liquidating dividend.

In the Cumberland Public Service Company case this court found that the physical assets had actually been distributed to the stockholders and that the stockholders had thereafter sold them and, hence, that the corporation was not liable for the tax on the gain. The Supreme Court adopted this finding and, on the basis of it, held that the corporation was not liable on the gain derived from the sale.

In the latter case the Supreme Court thus commented on the tax pattern laid down by Congress [338 U.S. 451, 70 S.Ct. 282]:

"The oddities in tax consequences that emerge from the tax provisions here controlling appear to be inherent in the present tax pattern. For a corporation is taxed if it sells all its physical properties and distributes the cash proceeds as liquidating dividends, yet is not taxed if that property is distributed in kind and is then sold by the shareholders. In both instances the interest of the shareholders in the business has been transferred to the purchaser. Again, if these stockholders had succeeded in their original effort to sell all their stock, their interest would have been transferred to the purchasers just as effectively. Yet on such a transaction the corporation would have realized no taxable gain.

"Congress having determined that different tax consequences shall flow from different methods by which the shareholders of a closely held corporation may dispose of corporate property, we accept its mandate. It is for the trial court, upon consideration of an entire transaction, to determine the factual category in which a particular transaction belongs. Here as in the Court Holding Co. case we accept the ultimate findings of fact of the trial tribunal."

To correct the uncertainty of the existing law, Congress incorporated section 337 into the Internal Revenue Code of 1954. The purpose of this section was to exempt the corporation from liability for the tax on the gain on the sale of its assets and to take it into account only in computing the tax on the individual stockholders under section 331. This eliminated the possibility of double taxation of the stockholders and of a corporation selling its assets in order to liquidate, resulting from a failure to observe the proper formalities in effecting a disposition of the corporation's assets.

The purpose of the section is set out in House Report No. 1337, 83d Cong., 2d Sess., pages 38–39, A106–A109 (3 U.S. Code Cong. & Adm.News, 1954, pp. 4064, 4244–4247). We quote the following from page 4064 of 3 U.S.Code Cong. & Adm.News:

"(3) *Court Holding Company.*— Your committee's bill eliminates questions arising as a result of the necessity of determining whether a corporation in process of liquidating made a sale of assets or whether the shareholder receiving the assets made the sale. Compare Commissioner [of Internal Revenue] v. Court Holding Company (324 U.S.

331, 65 S.Ct. 707 [89 L.Ed. 981] ), with United States v. Cumberland Public Service Company (338 U.S. 451, 70 S.Ct. 280 [94 L.Ed. 251] ). This last decision indicates that if the distributee actually makes the sale after receipt of the property then there will be no tax on the sale at the corporate level. In order to eliminate questions resulting only from formalities, your committee has provided that if a corporation in process of liquidation sells assets there will be no tax at the corporate level, but any gain realized will be taxed to the distributee-shareholder, as ordinary income or capital gain depending on the character of the asset sold."

Also on page 4244, the Report states:

" * * * Accordingly, under present law, the tax consequences arising from sales made in the course of liquidation depend primarily upon the formal manner in which transactions are arranged. The possibility that double taxation may occur in such cases results in causing the problem to be a trap for the unwary."

The Senate Report is to the same effect. See pages 4679–4680.

 The taxation of the gain derived from an involuntary conversion of the property into cash during liquidation is clearly contrary to the declared purpose of Congress in enacting the section, which was to avoid double taxation incident to the liquidation of a corporation, by exempting the corporation from liability for gain derived from the disposition of its capital assets, irrespective of whether or not certain formalities had been observed. Literally, an involuntary conversion is not a sale but what Congress had in mind was a conversion of a corporation's capital assets into cash, whether voluntary or involuntary, and the distribution of the cash to the stockholders. It is not conceivable that Congress would have drawn a distinction between a gain from a voluntary conversion and an involuntary one, had

the possibility of an involuntary conversion during liquidation come to its attention. The purpose was to exempt the corporation from liability for the tax and to collect the tax from the stockholders alone. This being true, we must hold, in order to carry out the clear purpose of Congress, that an involuntary conversion comes within the intent of Congress when it exempted the corporation from liability for a tax on the gain derived from a sale of its property in liquidation.

But defendant says the Supreme Court in Helvering v. William Flaccus Oak Leather Co., 313 U.S. 247, 61 S.Ct. 878, 881, 85 L.Ed. 1310, held that gain derived from the proceeds of a fire insurance policy did not come within the provisions of section 117(d) of the Revenue Act of 1934, 26 U.S.C.A.Int.Rev.Acts, page 708, which provided in part: "Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges." The Court held that the amount received from an insurance company was not derived from the "sale or exchange" of a capital asset. But there was nothing in the Revenue Act then under consideration to indicate that such an involuntary conversion should be treated as a sale or exchange. On the contrary, the Court pointed out that in other sections Congress had "specified the ambiguous transactions which are to be regarded as sales or exchanges for income tax purposes," and that an involuntary conversion of the taxpayer's property was not one of them; thus, evidencing a Congressional intent that it was not to be regarded as a sale or exchange.

That case did not involve gain derived by a corporation during liquidation from insurance on property destroyed. In such case we think the Congressional intent in incorporating section 337 into the Revenue Code of 1954 would be defeated unless an involuntary conversion of the taxpayer's property be held to come within the terms of a sale or exchange of it.

But, whether or not before the adoption of the Internal Revenue Code of 1939 the Flaccus Oak Leather Company decision was applicable to gain from an involuntary conversion derived by a corporation in liquidation, it is clear that after the adoption of the Code involuntary conversions were considered as gains and losses from sales or exchanges of capital assets. Section 117(j) of the 1939 Code, 26 U.S.C.A. § 117(j) is section 1231 of the 1954 Code, 26 U.S.C.A. § 1231. It reads in part:

"If during the taxable year, the recognized gains on sales or exchanges of property used in trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of the destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of the property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months."

Here Congress says, in the same Act which contains section 337, exempting a corporation in liquidation from gain derived from the sale or exchange of its property, that "such (meaning involuntary conversions, among others) gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months." In determining the gain derived by a corporation, Congress says we must take into account gains from involuntary conversions, as if the transaction was a sale or exchange.

■ All this, it seems to us, clearly shows a corporation in liquidation is exempt from tax on the gain from an involuntary conversion.

■ 2. The second question presented in this case concerns the tax treatment of the attorney and adjuster fees incurred in the collection of the insurance proceeds. The plaintiff says that these fees are "ordinary and necessary" business expenses deductible under section 162 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 162. The Commissioner, on the other hand, says that these fees are capital expenditures and should be used only to reduce the gain.

In computing the gain derived from the collection of the insurance on the property destroyed by fire, it does not seem open to question that the taxpayer should deduct whatever expenses he incurred in realizing this gain. This net gain is what section 337 says shall not be recognized. But, plaintiff says the expenses should not be applied against the expenditure required to realize the gain, but should be allowed as a deduction from other income. Thus, it says: The gain derived should not be recognized, but the cost of realizing the gain should be recognized. This seems to us an illogical and an inadmissible construction of the statute, and contrary to all precedent.

■ For many years it has been recognized that fees incurred in realizing a capital gain must be deducted from the gross amount received to arrive at the net gain for tax purposes. It was so held with reference to brokerage commissions on the sale of securities. Spreckels v. Commissioner, 315 U.S. 626, 62 S.Ct. 777, 86 L.Ed. 1073; cf. Helvering v. Winmill, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52. Also, the commissions paid by the seller in a real estate sale are treated in the same manner. See, e. g., Irma Jones Hunt, 47 B.T.A. 829; Frank Cavanaugh, 19 B.T.A. 1251. Attorney and appraiser fees incurred in obtaining compensation for the condemnation of taxpayer's property are also treated as an offset against the amount received in such a proceeding. Williams v. Burnet, 61 App.D.C. 181, 59 F.2d 357; Isaac G. Johnson & Co. v. United States, 2 Cir., 149 F.2d 851; William Petit, 8 T.C. 228.

In each of these cases the taxpayers incurred the expenses in the realization

**378**

of gain from the disposition of capital assets or assets treated as such under the tax laws. Only in instances where the income received from the sale would be ordinary income to the taxpayer, and not capital gain, have the courts allowed the taxpayer to deduct the expenses incurred as "ordinary and necessary" in the conduct of its business. Cf. Spreckels v. Commissioner, supra. In such case it makes no difference whether the deduction is allowed against the gain, in determining gross income, or is allowed as a deduction from gross income, to determine net income, but it does make a difference where a capital asset held for more than six months is concerned. In the instant case the adjuster and attorney fees were expended to realize a capital gain. The gain derived by the taxpayer is the gross gain less what it cost to realize it.

We have examined both United States v. Pate, 10 Cir., 254 F.2d 480, and Ticket Office Equipment Co. v. Commissioner, 20 T.C. 272; affirmed on other grounds, 2 Cir., 213 F.2d 318. In each of those cases the court held that attorney and adjuster fees incurred in the collection of claims arising from an involuntary conversion by fire were deductible as ordinary and necessary business expenses. We must respectfully disagree. Expenses necessarily incurred to realize a capital gain reduce the amount of that gain and partake of the nature of the gain to which they relate. Cf. Arrowsmith v. Commissioner, 344 U.S. 6, 73 S.Ct. 71, 97 L.Ed. 6.

It results that plaintiff may recover the taxes which it has previously paid on the gain resulting from the involuntary conversion of certain of its assets, with interest as provided by law, but it is not entitled to deduct the attorney and adjuster fees incurred as ordinary and necessary business expenses. The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

JONES, Chief Judge, and LARAMORE, Judge, concur.

MADDEN, Judge, took no part in the consideration and decision of this case.

LITTLETON, Judge (Retired) (concurring in part and dissenting in part).

I agree with the conclusion of the majority that the gain received from the involuntary conversion in this case cannot, under section 337 of the Internal Revenue Code of 1954, be recognized to plaintiff corporation, but I disagree with their conclusion that the attorneys' and adjuster fees incurred in the collection of the insurance proceeds cannot be treated as ordinary and necessary business expenses, and as to this point I must respectfully dissent.

I think that fees paid to attorneys and adjusters in connection with the recovery of insurance proceeds consequent to the burning of taxpayer's property are within the common meaning of the terms ordinary and necessary business expenses, as they are used in section 162 of the Internal Revenue Code of 1954. I cannot find, and the majority does not mention, any statutory provision which requires us to consider them otherwise. Neither is there cited nor have I been able to find any administrative regulation which requires such a result.

It is true that brokerage commissions on the sale of securities, commissions paid in a sale of real estate, and attorneys' fees incurred in obtaining compensation in condemnation proceedings are treated as offsets against the amounts received in such transactions. In Spreckels v. Commissioner, 315 U.S. 626, 62 S.Ct. 777, 86 L.Ed. 1073, where the Supreme Court held that brokerage commissions on securities sales are an offset against the selling price, it made clear that it was dealing with regulations promulgated by the Treasury which required such a result. The same is true of Helvering v. Winmill, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52, which is also cited by the majority.

The Board of Tax Appeals decisions, Irma Jones Hunt, 47 B.T.A. 829, and Frank Cavanaugh, 19 B.T.A. 1251, which are relied on by the majority to establish

that real estate sales commissions are treated as offsets against the sales price give only the most cursory consideration to that question, and are of no help in solving the problem in the instant case.

The cases cited by the majority as establishing the proposition that attorneys' and appraisers' fees incurred in obtaining compensation for the condemnation of a taxpayer's property are treated as an offset against the amounts received clearly indicate that the basis for their conclusion is that the expenses of prosecuting claims for compensation for the taking of property are incurred by taxpayers primarily in connection with "the protection of their rights arising from the ownership of the property, and in that aspect, as a loss, might be taken into account as a part of the cost of the property." Williams v. Burnet, 61 App. D.C. 181, 59 F.2d 357, at page 358.

This reason for such a conclusion with respect to condemnation proceedings does not apply with equal force to such fees as are involved in the instant case. These fees are not primarily related to the protection of rights in the property itself, but rather arise from a contingency in connection with the operation of the business. I do not think that they must be treated as are sales commissions or expenses of condemnation proceedings. Their nature seems to me to be much more that of an ordinary and necessary expense which befalls a corporation confronted with the problem of salvaging the remains of its business after most of its assets have burned. As was said by the Tax Court in Ticket Office Equipment Company v. Commissioner, 20 T.C. 272, at page 280, "the purpose of the expenditure was to collect a sum of money, and the requirement arose in the ordinary course of [taxpayer's] business. The item involved was a claim for money damages; the dispute did not concern title to a capital asset nor an additional expenditure undertaken to improve or increase the value of any capital item then owned by [taxpayer]."

United States v. Pate, 254 F.2d 480, 483, decided by the Tenth Circuit in 1958, dealt with the very issue with which we are here concerned, and concluded that such attorneys' fees are to be distinguished from the kinds of expenses which the majority here discusses, and that they are deductible as ordinary and necessary expenses rather than as capital expenditures. I would follow this authority, which I think reaches the sounder conclusion.