ISABEL MÉNDEZ RÍOS, Plaintiff and Appellee, *v.* SECRETARY OF THE TREASURY, Defendant and Appellant.

No. 11012. Argued June 1, 1954.—Decided August 9, 1954.

*José Trías Monge, Attorney General,* and *Manuel J. Medina Aymat, Assistant Attorney General,* for appellant. *Jorge de la Cruz Figueroa* for appellee.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

This appeal involves a notice served on plaintiff in the year 1950 by the then Treasurer of Puerto Rico, as to an

alleged income tax deficiency with respect to the year 1944. The uncontroverted facts are the following:

In the year 1944 plaintiff, Isabel Méndez Ríos, was married to Clemente Santisteban. The latter filed an income tax return for the year 1944, where he declared a total net income of $31,432.02 received jointly by him and his wife, plaintiff herein. He paid an income tax of $9,185.69. In his return Santisteban set forth, under oath, that on the last day of the tax year of 1944 he was married to and living with his wife Isabel Méndez Ríos.

On February 21, 1947, the former District Court of San Juan decreed a divorce between Santisteban and the taxpayer, on the ground of separation of the parties for an uninterrupted period of more than three years. That is, according to the judgment, they did not live together during the entire tax year in question, 1944. On that same date, February 21, 1947, Isabel Méndez Ríos and Santisteban, already divorced, executed a deed of liquidation and partition of conjugal property.

On June 19, 1950, the Treasurer notified the plaintiff that a tax deficiency had been determined as to the income obtained in the year 1944 by the conjugal partnership then existing between her and Santisteban, which deficiency amounted to $10,133.38. Said deficiency is not contested as to its amount. The Treasurer notified the plaintiff that she should pay the Treasury one half of said deficiency incurred by the conjugal partnership, that is, the sum of $5,066.69 (one half of $10,133.38) under the theory that on the dissolution of the conjugal partnership each spouse must answer for one half of the delinquent taxes of the conjugal partnership so dissolved. Santisteban paid his corresponding half of $5,066.69, but not the plaintiff, who challenged the deficiency of $5,066.69 before the former Tax Court, alleging in the complaint that Santisteban should pay the total deficiency of $10,133.38. At the hearing of the case in the trial court, the taxpayer further alleged that in 1944 she was living

separate and apart from her husband as was shown by the aforesaid divorce decree which was presented and admitted in evidence.

On November 10, 1952, the San Juan Part of the Superior Court rendered an opinion and judgment holding that the taxpayer was bound to pay her corresponding share (one-half) of the tax deficiency of the former conjugal partnership and that Santisteban was not bound to pay the total deficiency, but that, in view of the fact that the spouses were not living together in 1944, she was entitled under § 24 of our Income Tax Act, as said Section was amended by Act No. 31 of 1941 (Sess. Laws, p. 478) to present a separate and individual income tax return, it being held that "Clemente Santisteban paid tax in excess of the amount he was bound to pay, in all, in relation to the separate income of each spouse," whereby the Secretary of the Treasury ought to credit to plaintiff Santisteban's overpayment. The judgment rendered was the following:

"For the reasons set forth in the foregoing opinion, the complaint is dismissed *as the same has been drafted;* and the Treasurer is ordered to make a new determination, taking into consideration the taxpayer's right to file a separate income tax return as well as the excess amount that was paid in her name in 1945 in connection with the year 1944. The Treasurer shall file the new computations in the Secretary's office of this Court within the term of twenty (20) days from the date notice of this judgment is served."

The Secretary of the Treasury filed the required computation in the trial court within the designated term of 20 days. He determined a total net income to the conjugal partnership for the year 1944 of $45,127.82 ($31,432.02 originally reported by Santisteban plus $13,695.80 according to the investigation of the Treasurer, said amount not being in contest herein). According to the computation, plaintiff was charged with half of said net income, that is, as having received the sum of $22,563.91 for tax purposes. From this

sum the amount of $800 for personal exemption was deducted whereby the tax levied on the net income thus reduced to $21,763.91 amounted to $5,800.85. A deduction or allowance of one half of the tax already paid in 1945 by Santisteban was then made, that is, $4,592.84, which is one half of $9,185.69, already paid by Santisteban, leaving a deficiency of $1,208.01 to which sum the Treasurer added 25 per cent of the tax (25% of $5,800.85), as penalty for not filing her individual and separate return for the year 1944, said 25 per cent amounting to $1,450.21, to be added to the deficiency of $1,208.01.

Subsequently, plaintiff challenged said computation alleging that (1) "the debt, if any, which said computations represent, is a debt of the conjugal partnership, and not individually of Isabel Méndez Ríos" and (2) the total deficiency of both spouses was $10,601.70, and since Santisteban had already paid the sum of $14,252.38 ($9,185.69 paid by him in the year 1945 plus $5,066.69 paid by him in the year 1950), the Secretary had already collected a sum exceeding the total tax of $10,601.70 which he claimed. The San Juan court held that plaintiff's first allegation, as to the sole liability of the conjugal partnership, was untenable, since it involved a question of law extraneous to the sphere of action in a computation, but the trial court held that in view of the payments "in excess" made by Santisteban, the Secretary of Treasury had in his possession an excess of $3,858.69, which he should credit to plaintiff. The Secretary was ordered to make a new computation, which he did, on the basis that the taxpayer would owe no tax if the court's last decision were accepted. The court approved the new computation. The Secretary of the Treasury then appealed to this Court from the judgment and decision concerning the computation, and assigned the following errors:

"1.—The lower court erred in holding that the plaintiff appellee was not bound to pay one half of the delinquent taxes of the dissolved legal conjugal partnership.

"2.—The lower court erred in holding that Clemente Santisteban 'paid tax in excess of the amount he was bound to pay, in all, in relation to the separate income of each spouse.'

"3.—The lower court erred in sustaining the challenge to the computation filed by the defendant appellant, notwithstanding that said court admitted that the computation 'was correct from a mathematical point of view.' "

The first problem herein refers to the efficacy of the single joint return filed by Santisteban in 1945, in representation of the conjugal partnership with respect to the 1944 income. There is a controversy as to the right or obligation of the taxpayer to file a separate return inasmuch as the spouses did not live together in 1944. Section 24 of our Income Tax Act, as amended by Act No. 31 of April 12, 1941 (since the amendment introduced by Act No. 150 of 1949 (Sess. Laws, p. 402) has no bearing on the instant case) provides:

"Section 24.—(a) The following individuals shall each make under oath a return stating specifically the items of his gross income and the deductions and credits allowed under this title—

"(1) Every individual having a net income for the taxable year of $800 or over if unmarried, or if married and not living with husband or wife:

"(2) Every individual having a net income for the taxable year of $2,000 or over, if married and living with husband or wife; and

"(3) Every individual having a gross income for the taxable year of $5,000, or over, regardless of the amount of his net income.

"(b) If a husband and wife living together have a net income for the taxable year of $2,000, or over, or an aggregate gross income for such year of $5,000 or over, the total income of both shall be included in a single joint return, and the normal and additional tax shall be computed on the aggregate income. The net or gross income received by anyone of the spouses shall not be divided between them."

In the instant case it was proved in the court of first instance that on February 21, 1947, a divorce decree was

rendered dissolving the matrimonial ties between the taxpayer and Santisteban, on the ground of separation, it being held that they had been separated for three uninterrupted years, including all of the year 1944. That judgment was equivalent to a pronouncement that the spouses had not lived together during the year 1944. *Cf. Godreau v. Guerrero,* 68 P.R.R. 82; *Cabrer v. Pietri,* 67 P.R.R. 409; *Miranda v. Padró,* 66 P.R.R. 125; *Cot v. Emanuelli,* 64 P.R.R. 620; *Simonet v. Sandoval,* 63 P.R.R. 503; *Núñez v. López,* 62 P.R.R. 543. Therefore, since they did not live together during the year 1944, paragraph (*b*) of § 24 was not applicable and there was no obligation to include the total income of both in a single joint return, and hence the normal and additional tax could not be computed on the joint income. Contrariwise, the taxpayer was bound to comply with paragraph (*a*) (1) of § 24 and she should have filed a separate return since her net income exceeded $800, and she was married and not living with her husband. Such conclusion is a necessary consequence of the express and clear terms of § 24. We are well aware of the postulate of substantive law to the effect that income obtained during marriage may constitute conjugal property, even if the spouses are living separately when the income accrues, cohabitation not being essential in order to consider the income as conjugal property, since the partnership is not dissolved, and the wife does not lose her right to share in the acquired property, by the fact itself of separation. *Martínez Llonín v. Fernández,* 47 P.R.R. 553; Scaevola, Vol. 2, pp. 67, 68, 69. There should be no room for judicial distress or philosophical speculations as to the integrity or joint nature of community income notwithstanding separation, since § 24, upon referring to the obligation of filing separate returns when the spouses do not live together, neither increases nor diminishes the substantive property rights of the spouses, but it merely establishes a practical and concrete method of declaring and computing the tax. See the cases of *Ballester v. Court of*

*Tax Appeals*, 61 P.R.R. 460, and *Buscaglia, Treas*. v. *Court of Tax Appeals*, 62 P.R.R. 416, where the same observation is made as to the provision in force prior to Act No. 31 of 1941 concerning the option granted to the spouses for presenting separate returns. In *Buscaglia, Treas*. v. *Court of Tax Appeals, supra,* it is stated: "We ratify our opinion that the Legislature of Puerto Rico had and has authority to require either a joint or separate return by husband and wife, and that in choosing either form, no rule of property is established."

Irrespective of the fact that it is within the power of the Legislature to establish the requirement of separate returns when the spouses do not live together, such a requirement is neither arbitrary nor capricious but has a reasonable basis, since in the field of concrete facts and experience, which prevails over the stern and doctrinaire concept, a wife who does not live with her husband would probably not receive the whole of the benefits of her husband's income. *Cf. Ballester* v. *Court of Tax Appeals, supra,* at pp. 470 and 472.

In *People* v. *Franceschi*, 74 P.R.R. 771, 779, it was alleged, on appeal, that the taxpayer did not live with his wife during the tax year in question, as evidenced by a divorce decree. But that case differs from the one at bar. That was a criminal proceeding where it was alleged that the defendant attempted to avoid the payment of tax. It was stated that the allegation we have mentioned was not adequate and sufficient, especially when "he did not allege during the trial in the court *a quo* that the return filed had been filed in accordance with §§ 18 and 24 of the Income Tax Act, that is, as a married person not living with his wife, and divorced during the taxable year."

It has been held in the United States that in those States where the community property system prevails and where the spouses may choose between a joint or separate return, the exercise of said option by electing to file a joint

return is binding on the spouses and they are precluded from subsequently filing separate returns in substitution for the joint return. *United States* v. *Pettigrew*, 81 F. 2d 666; *O'Rourke* v. *Commissioner*, 81 F. 2d 668; *Binder* v. *Welch*, 107 F. 2d 812; *Safety Electric Products Co.* v. *Hervering*, 70 F. 2d 439; Mertens, *Law of Federal Income Taxation*, Vol. 8, p. 559, § 47.11. Said rule is predicated on the desire to avoid difficulties in the correct determination of the taxes due, with the corresponding administrative inconveniences. *Rose* v. *Grant*, 39 F. 2d 340, 341. However, although said rule could have been applicable in Puerto Rico under the legislation prior to Act No. 31 of 1941, by virtue of which former law the spouses had the option or election of filing separate or joint returns, it is not applicable under the amendments introduced to § 24 in the year 1941, since by virtue of § 24 in force the spouses have no such option. Two separate and independent categories or requirements are established, giving rise to two independent obligations, that is, joint returns when the spouses live together, and separate returns when they do not. If one of these two modalities is chosen the corresponding obligation arises and it may not be excused by the fulfillment of the other obligation corresponding to the other modality. That is, if the spouses do not live together, the sole requirement is to file separate and not joint returns, the latter being legally ineffective. It is not the case of an option or election between two alternate requirements but a case of two independent requirements, each one placed in its respective field of action. The unnecessary and ineffective fulfillment of a requirement under a situation of facts not exacting such requirement should not work any hardship in replacing the erroneous action by the action required by law under said situation of facts.

In view of the foregoing, the taxpayer was bound to file a separate return for the year 1944, and the joint return filed by Santisteban lacked efficacy and effectiveness. The situation involved stems from the assumption that no return

was filed for the year 1944. The taxpayer's debt should be computed pursuant to the conjugal partnership's income in 1944 according to the reliquidation made by the Treasurer in the year 1950, which amount is not in contest here, and according to the liability which corresponds to plaintiff under her own separate return. The tax owed by her would be the amount levied if she had filed a separate return. From another point of view, the sum to be paid by the taxpayer should be measured by the corresponding liability of a spouse after the dissolution of the marriage and after the liquidation of the conjugal partnership, with respect to debts of the conjugal partnership pending payment.

The questions concerning the rights and liabilities of the spouses forming a conjugal partnership, with respect to the community income and debts, should be determined pursuant to the local substantive law. 3 Mertens, § 19.01, p. 3, note 2, and cases cited; *Comm.* v. *King*, 69 F. 2d 639. Section 1295 of our Civil Code establishes the essential elements of the conjugal partnership by providing as follows:

"Section 1295.—By virtue of the conjugal partnership the earnings or profits indiscriminately obtained by either of the spouses during the marriage shall belong to the husband and the wife, *share and share alike,* upon the dissolution of the marriage." (Italics ours.)

The right of each spouse to half of the community income is a basic postulate of the community property system under the civil law. Scaevola in Vol. 22, p. 19 *et seq.*, traces the history of the right of each spouse to half of the income from "the times of the customs of the Germanic tribes, which were preserved by the Goths, whose women in the early times abandoned their former homes and lands to follow their husbands in war and in peace, and just as they shared the perils and labors it was just and fair that they should also be participants of the fruit borne by said labor," in contrast with "the simple Castillian women who lay under the shade of their merlons, cherishing the memory of their absent husbands with the simple emotion of reading the 'Cantigas,' "

up to the advancement and development of a sense of equality. At page 21 it is stated that the division by moiety of the profits is the basis and essence of the institution of the community partnership. At page 41 it is stated that the fundamental, predominant and typical concept of the conjugal partnership consists in the division share and share alike. See also 9 Manresa 718, 5th revised ed. As to the right of each spouse to half of the profits, see the cases of *Vega* v. *Cía Popular de Transporte*, 72 P.R.R. 491, once the divorce has been decreed; *Rossy* v. *Registrar of San Juan*, 23 P.R.R. 513; *Fabián* v. *Registrar of San Juan*, 25 P.R.R. 838; *Hernández* v. *Heirs of Córdova*, 32 P.R.R. 274; *Maldonado* v. *Rodríguez*, 58 P.R.R. 778.

 It is true that § 1295 refers to the right to one half of the profits once the marriage has been dissolved. The tax involved herein refers to the profits obtained in the year 1944 prior to the dissolution of the marriage. In order to decide the problem involved herein, we need not consider the nature of a spouse's right prior to the dissolution of the matrimonial tie, whether it is a latent right, a vested right or a mere expectancy. What is actually essential is that the right be measured by an amount corresponding to one half of the profits pursuant to the basic system of the civil law. Where each spouse has the obligation to file a separate return, it must be assumed that the incomes will be distributed share and share alike. Precisely, when there existed in Puerto Rico, prior to 1940, and where there still exists in other jurisdictions having the community property system, the optional right to file separate returns, each spouse had to declare in his individual return one half of the income of the conjugal partnership. *Casal* v. *Sancho Bonet*, 53 P.R.R. 609, 618; 3 Mertens 5, 6, § 19.01, and cases cited, especially the cases of *Poe* v. *Seaborn*, 282 U. S. 101; *Goodwell* v. *Koch*, 282 U. S. 118; *Hopkins* v. *Bacon*, 282 U. S. 122; *Bender* v. *Pfaff*, 282 U. S. 127; *U. S.* v. *Malcolm*, 282 U. S. 792; *Berkowitz* v. *Comm.*, 108 F. 2d 319,

where the points of view of some text writers regarding the community property system are discussed.

In any event, in the case at bar the conjugal partnership was dissolved by a divorce decree (*Vega* v. *Tossas*, 70 P.R.R. 368), and the liquidation of the conjugal partnership was made. Therefore, plaintiff's right to one half of the community property was conclusive. *Vega* v. *Cía. Popular de Transporte, supra; Maldonado* v. *Rodríguez, supra; Fabián* v. *Registrar, supra.*

 From another point of view, taxes are, as a general rule, debts of the conjugal partnership. 9 Manresa 604, 694, 695, 5th revised ed. In 22 Scaevola 246, it is stated that taxes are a specific and necessary condition for the purpose of the utility obtained. When the marriage is dissolved and the liquidation made, the community debts must be paid in the first instance, from the community property. Sections 1319 and 1320 of the Civil Code; 9 Manresa 694, 695, 696; 22 Scaevola 264, 265, 267. After the dissolution of the marriage and after liquidation, where the delinquent taxes have not been paid, as in the case at bar, each spouse must pay one half of the income tax due, said postulate being a logical consequence of the principle of equality in the enjoyment of the profits. 3 Mertens 70, § 19.42; *Commonwealth* v. *King, supra; Minnie Felber* v. *Comm. Int. Rev.*, 45 B.T.A. 197. The liability of each spouse for the payment of said delinquent taxes must be joint. Section 1298 provides that the conjugal partnership shall be governed by the rules of articles of partnership in all that does not conflict with the express provisions of this chapter. Under § 1589 of the same legal body the liability of the partners for the partnership debts is joint (*mancomunada*), and not several (*solidaria*), according to the distributive share of each partner. 11 Manresa 406 5th rev. ed.; *Cf. Earle* v. *Comm.*, 38 F. 2d 965; *Anne Jacobs* v. *Comm.*, 7 Tax Court 1481.

 The judgment rendered by the trial court was correct since it was a reflection of the principles that we have set forth in this opinion, that is, that pursuant to the reliquidation of the community income made in 1950, which second liquidation has been accepted as correct, and bottomed on the alleged obligation of each spouse to file a separate return, the tax liability of each spouse, that is, of the plaintiff, must be determined by her right to receive one half of the income accrued to the conjugal partnership, as reliquidated in the year 1950. The first computation submitted by the Secretary of the Treasury in compliance with the judgment was also entirely correct. The Secretary of the Treasury, defendant herein, found that the total amount earned as community income for 1944, was $45,127.82 and validly charged one half of that income ($22,563.91) to the taxpayer, deducting therefrom $800 for personal exemption of a spouse who does not live with the other spouse, pursuant to § 18 of the law. A tax of $5,800.85 was levied on the amount of $21,763.91. The Secretary of the Treasury then deducted from said tax of $5,800.85 one half of the sum of $9,185.69 which Santisteban had already unduly paid in the year 1945, there remaining a deficiency of $1,208.01. The procedure used by the defendant is correct since, being liable for the tax on one half of the community income, plaintiff was entitled to deduct one half of the amount unduly paid by Santisteban in representation of the community partnership, when the marriage had not yet been dissolved. To the deficiency of $1,208.01 the Treasurer added the sum of $1,450.21 as a penalty for failing to file a separate return in the year 1945 with respect to the taxable year of 1944. Said penalty is not challenged here.

Inasmuch as the first computation filed by the Secretary of the Treasury was correct, the decision of the trial court of February 13, 1953, ordering defendant to make new computations, was incorrect. The trial court held that since Santisteban had already paid the Treasury the total amount

of $14,252.38 ($9,185.69 paid in the year 1945 plus $5,066.69 paid in the year 1950), the Secretary of the Treasury had received an overpayment of the tax owed by both spouses and that the excess should be credited to the last deficiency imposed on the plaintiff, as a result of which the latter would be owing no tax to the Treasury. The extension of said credit by virtue of the payment of $14,252.38 was not a question arising from the original pleadings nor was it an object of decision by the court of first instance in rendering judgment. But in view of the fact that both parties were heard on that point at the hearing held when the first computation was challenged, in which the allegation of such overpayment was raised, we shall consider the merits of the question raised. *Cf. González Padín* v. *District Court,* 66 P.R.R. 909.

The sum of $14,252.38 which it is alleged represents an overpayment which should be credited to the plaintiff may be divided into two items: The first is $9,185.69 paid in the year 1945. Said item has been offset or practically erased, without effective results, because when the first computation was made pursuant to the judgment, one half of said payment was credited against plaintiff's unpaid tax. The other half could have been credited to Santisteban had he raised a contention as to that particular and, therefore, the payment of $9,185.69 was already duly considered when the first computation was made. The second item is that of $5,066.69 paid by Santisteban in the year 1950. He made said payment after the dissolution of the marriage and the liquidation of the conjugal partnership in payment of his individual share of one half of the alleged tax deficiency of the conjugal partnership, after the Treasurer made the reliquidation of the income. Santisteban did not pay the $5,066.69 in representation of the conjugal partnership, which no longer existed. He paid said sum on his own behalf as a taxpayer separate and distinct from the plaintiff. That is more so by virtue of the postulates that we

have already pointed out, as to the right and obligation of filing separate returns when husband and wife are not living together when the income accrues, which determines the individual and separate liability of each spouse for one half of the income. Therefore, if Santisteban paid in excess of what corresponded to him individually, it was a matter which affected him exclusively and which he never raised, and it should not favor plaintiff, who is an independent taxpayer, nor decrease her liability. An overpayment made by a taxpayer, as an individual, may not be applied to the deficiency of another independent taxpayer. Said rule is applicable to the payment made by a husband when he pays as an individual. 10 Mertens 370, § 58.36; *Irma Jones Hunt*, 47 B.T.A. 829.

Focusing our attention on plaintiff, the truth is that the corresponding amount, that is, one half of $8,185.69 which had been paid by the husband in representation of the conjugal partnership, was credited against her unpaid tax. In view of the foregoing, the decision of the trial court of February 13, 1953, was incorrect. The first computation made by the Secretary of the Treasury in fulfillment of the judgment already rendered was entirely correct.

The judgment rendered by the trial court on November 10, 1952, will be affirmed and the decision rendered by that court on February 13, 1953, will be reversed and the case remanded to the San Juan Court for further proceedings not inconsistent with this opinion.