Ulpiano Casals Valdés, demandante y apelado, *v.* Manuel V. Domenech, sustituído por Rafael Sancho Bonet, Tesorero de Puerto Rico, demandado y apelante..

Núm. 7402.—*Sometido:* Marzo 8, 1938. *Resuelto:* Julio 28, 1938.

*Hon. Procurador General B. Fernández García, R. Cordovés Arana,*
*Primer Procurador General Auxiliar y M. Rodríguez Ramos, Sub-*
*Procurador General Auxiliar,* abogados del apelante; *J. J. Ortiz*
*Alibrán,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Cuatro causas de acción se establecen en la demanda que originó este pleito. Por la primera se reclaman $201.27 pagados bajo protesta por contribución sobre ingresos devengados en 1918; por la segunda $697.17 también pagados bajo protesta por contribución sobre ingresos correspondientes al año contributivo de 1920 y por la tercera $140.90 de igual modo pagados bajo protesta por contribución sobre ingresos percibidos en 1921.

A la cuarta causa de acción nos referiremos después de resolver la cuestión envuelta en relación con las tres primeras que a virtud de la contestación y de las manifestaciones del demandante al comenzarse el juicio, quedó reducida a si la contribución adeudada había o no prescrito al tiempo de su reclamación.

Son hechos probados que para los años 1918, 1920 y 1921 el demandante tuvo ingresos y no rindió declaraciones al

Tesorero a los efectos de la imposición y el pago de la contribución que sobre los mismos debió satisfacer, y que en tal virtud y en uso de las facultades que el estatuto le confiere, el Tesorero hizo las declaraciones que debió hacer el contribuyente y le impuso y cobró las contribuciones cuya devolución reclama.

Actuó en 1931. Para esa fecha regía la Ley núm. 74 de 1925 (pág. 401), cuyas secciones 60 y 61, transcritas en lo pertinente disponen:

"Sección 60.—(a) Excepto lo que disponen la sección 61 y la subdivisión (d) de la sección 57 y la subdivisión (b) de la sección 62:

"(1) El importe de las contribuciones sobre ingresos y beneficios excesivos y el importe de la contribución sobre ingresos impuestos por esta Ley, o por la ley de contribución sobre ingresos número 59 de 1917, la ley de contribuciones sobre ingresos número 80 de 1919, la ley de contribuciones sobre ingresos Núm. 43 de 1921, o por cualquiera de dichas leyes según han sido enmendadas, se tasarán dentro de cinco años después de radicarse la declaración, y no podrá entablarse un procedimiento judicial para el cobro de dichas contribuciones después de vencido dicho período....

"Sección 61.—(a) En el caso de una declaración falsa o fraudulenta con la intención de evadir la contribución, o en el caso de haber dejado de rendir la declaración, la contribución podrá ser impuesta, o un procedimiento entablado en una corte para el cobro de dicha contribución, en cualquier momento y sin hacerse tasación alguna.

"( .          .          .          . .          .          .          .

"(d) Esta sección (1) no autorizará la imposición de una contribución o el cobro de la misma mediante embargo o procedimiento judicial si en el momento de promulgarse esta Ley dicha imposición, embargo o procedimiento fuere impedido por cualquier período de prescripción existente, o (2) no afectará cualquier imposición hecha, o embargo o procedimiento judicial comenzado antes de promulgada esta Ley."

Con respecto a la contribución sobre los ingresos devengados en 1920 y 1921 es perfectamente claro que habiendo dejado el contribuyente de rendir sus declaraciones y no

estando prescrita la acción de cobro cuando empezó a regir la ley de 1925, tampoco había prescrito dicha acción en 1931 cuando actuó el Tesorero. Así lo resolvió la corte sentenciadora y el demandante no apeló de su resolución.

La corte sin embargo creyó que la acción había prescrito en cuanto al cobro de la contribución por los ingresos correspondientes al año 1918, y como así lo resolviera y dictara sentencia ordenando la devolución, el Tesorero apeló, señalando como el primer error en que funda su recurso el cometido a su juicio por la corte al sostener el criterio indicado.

■■ Creemos que la corte sentenciadora estuvo acertada en cuanto decidió que no bastaba el hecho solo de haberse dejado de rendir la declaración para decidir que la acción no había prescrito, si que era necesario alegar y probar que la declaración no se había rendido con el fin de evadir el pago de la contribución, por ser aplicable la Ley núm. 80 de 1919 en relación con la de 1925 y no ésta únicamente, debiendo revocarse lo que en contrario se resolvió en el caso de *Soto Gras* v. *Domenech,* 42 D.P.R. 524, pero creemos que erró al decidir que el Tesorero no probó su caso de acuerdo con lo exigido por la ley de·1919.

Ya hemos dicho que es un hecho probado que cuando el Tesorero actuó en 1931, el contribuyente no había rendido su declaración de ingresos correspondientes al 1918. El Tesorero alegó además en su contestación que no lo había hecho con el fin de evadir el pago de la contribución, ajustándose así a las exigencias de la repetida ley de 1919. ¿Lo probó? Veamos lo que dijo la corte de distrito sobre el particular. Fué así:

"Aunque el tesorero alega que el no haberse presentado declaración fué con el fin de evadir el pago de la contribución, no se nos ha presentado evidencia alguna tendiente a probar ese hecho. La alegación del demandado es una imputación de fraude y éste debe probarse, no por inferencias o deducciones, sino con hechos y de manera que no haya lugar a duda. No basta alegar fraude sino que es necesario probarlo y la prueba debe ser robusta, clara y convincente."

El contribuyente estaba obligado por sí mismo, sin gestión alguna de parte del gobierno a rendir su declaración y ya hemos visto que el gobierno en este caso concreto alegó que el contribuyente no había rendido su declaración con el fin de evadir el pago de la contribución. Ambas partes fueron a juicio y aparte del hecho de la no rendición que quedó demostrado en ése y en otros años contributivos, el gobierno no presentó otra evidencia sobre la intención del contribuyente. Descansó en los artículos 101 y 102 de la Ley de Evidencia—artículos 463 y 464 del Código de Enjuiciamiento Civil, ed. de 1933—que prescriben que ''una intención maliciosa y culpable, se presume de la deliberada comisión de un acto ilegal, con el fin de perjudicar a otro,'' el primero, y que ''todo acto ilegal fué cometido con intención ilegal'' y ''toda persona intenta la consecuencia ordinaria de un acto cometido por ella voluntariamente,'' el segundo.

A nuestro juicio, dadas todas las circunstancias concurrentes, la presunción es bastante. Difícilmente pudo llegar a la posesión del gobierno alguna prueba documental o testifical directa demostrativa de la deliberada intención del contribuyente. Presentó en evidencia su actuación. Y su actuación habla por sí misma. Tenía un deber legal que cumplir y no lo hizo, y no sólo se le imputó su falta de cumplimiento sino la intención con que dejó de cumplirlo. La omisión perjudicaba necesariamente al tesoro público. La no actuación llevaba consigo el no pago de las contribuciones. Era la consecuencia ordinaria del acto y el acto era contrario a la ley. Si el evadir el pago no fué la intención del contribuyente, a él correspondía demostrarlo, como intentó hacerlo declarando en el juicio que la omisión se debía a haber descansado en que la casa de comercio con la cual trabajaba rendiría las declaraciones por ser la costumbre del tenedor de libros hacerlo así para con los socios, explicación que no fué analizada por la corte de distrito en su relación del caso y opinión y que no nos parece de suficiente peso para relevarlo de responsabilidad.

El primer error en que se funda el recurso fué, pues, cometido. Examinemos el segundo que se formula así:

"La corte de distrito cometió error de derecho al resolver que los ingresos correspondientes al año 1929 deben dividirse de por mitad entre el demandante Ulpiano Casals y su esposa."

Para ello debemos comenzar por referirnos a la cuarta y última causa de acción, por medio de la cual alegó el demandante que el tesorero en 1931 le impuso una contribución de $1,118.48 sobre los ingresos que recibiera en 1929; que apeló a la Junta de Revisión y de acuerdo con su resolución liquidó el tesorero una contribución de $1,189.46, que con más $116.79 de recargos, pagó bajo protesta; que desde 1926 poseía bienes en común con Enrique Abarca y como resultado de transacciones con los mismos recibió $17,291.65 en 1929 pero que tal suma no representaba beneficios de ese solo año, debiendo distribuirse los ingresos entre 1926, 1927, 1928 y 1929, y que desde 1927 estaba casado con Santos Sellés y eso no obstante el tesorero al preparar de oficio la declaración lo hizo a nombre del demandante solamente, comprendiendo en una sola declaración la totalidad de ingresos que no le pertenecían exclusivamente sino de por mitad con su esposa con quien tenía constituída la sociedad de gananciales por razón de matrimonio que establece la ley.

Al decidir las cuestiones suscitadas la corte de distrito dijo que la evidencia aportada no era suficiente para demostrar a cuáles años correspondían los beneficios percibidos en 1929 y tomó como única base dicho año, tal como lo había hecho el Tesorero, pero resolvió que estando Casals casado para dicha época, el Tesorero no tuvo facultad para archivar una sola planilla, facultad que correspondía ejercitar en su caso a los esposos y dictó sentencia ordenando una nueva liquidación.

La ley aplicable, que lo es la núm. 74 de 1925, dispone en su sección 24 lo que sigue:

"(a) Cada uno de los siguientes individuos deberá presentar una declaración bajo juramento demostrando específicamente las

partidas de su ingreso bruto y las deducciones y créditos admisibles a virtud de este título—

".      .       .        .       .       .         .         .

"(*b*) Si un esposo o esposa que viven juntos tienen unidos un ingreso neto por el año contributivo de $2,500, o más, o unidos tienen un ingreso bruto durante dicho año contributivo de $5,000 o más—

"(1) Cada uno de ellos deberá presentar una declaración;  o

"(2) El ingreso de cada uno de ellos deberá ser incluído en una sola declaración conjunta, en el cual caso la contribución deberá ser computada sobre el ingreso en conjunto."

De suerte que el legislador estatuyó que cada esposo era un contribuyente separado, ordenándoles que presentaran sus declaraciones, pudiendo eso no obstante incluir sus ingresos en una sola declaración.  ¿A quién corresponde la elección?  Casals sostiene que exclusivamente a los esposos, por ser ellos los que pueden juzgar mejor su conveniencia. El tesorero por el contrario sostiene que cuando los esposos no hacen su elección en el término de ley, él debe hacerla. La corte sentenciadora, como sabemos, dió la razón a Casals. Después de citar la ley, se expresó en su opinión como sigue:

"Las anteriores disposiciones imponen a los esposos la obligación de presentar cada uno de ellos una declaración por separado;  pero de acuerdo con el inciso (2) los esposos tienen opción para presentar una sola declaración conjunta si así lo estiman conveniente.  Quiere decir que en primer término la ley considera a los esposos dos contribuyentes independientes uno de otro, pero con el derecho de elegir la presentación de una declaración conjunta.  El demandado a nuestro juicio no puede hacer la elección.  Si esto fuese así, esto es, si el demandado tuviese autoridad para hacer de los esposos una sola entidad contributiva, necesariamente cogería este medio para imponer una contribución más alta, como es la que resulta de los ingresos de ambos cónyuges combinados.  También la Sección 18 de la Ley de 1925 en su apartado (*c*) expresa que 'si dicho esposo y esposa rinden declaraciones separadas la exención personal puede ser tomada por cualquiera de los dos o dividida entre ambos.'  De manera que el estatuto no concede en ningún caso al tesorero el derecho de hacer *motu proprio* planillas consolidadas."

Lo ocurrido, según aparece de la declaración de Casals en el juicio, fué:

"P.—¿En el año 1929 usted era casado? R.—Sí, señor. P.—¿Y en el 1928? R.—También. P.—¿Usted recuerda cuándo se casó? R.—El 13 de junio de 1927. . . . P.—¿Cuál es el nombre de su esposa? R.—Santos Sellés. . . . P.—¿Usted podría informar a la corte si usted radicó planilla para ese año? R.—Sí, señor, le puedo decir que no. P.—¿Qué no? R.—Que no la radiqué. P.—¿Entonces el inspector hizo una planilla de oficio? R.—Sí, señor. . . . P.—¿Y su esposa, radicó alguna planilla? R.—Si mal no recuerdo, después que se recibió la planilla de oficio del tesorero se radicó una planilla enmendada a nombre de mi esposa y otra a nombre mío. P.—¿Las admitieron en tesorería? R.—No, señor. P.—¿Las rechazaron? R.—Sí, señor. P.—¿Usted puede decirle a la corte la fecha en que se radicaron esas planillas? R.—No puedo decirle. P.—¿Fué mucho tiempo después? R.—Fué casi inmediatamente al recibo de la planilla de oficio, creo que fué dentro de los treinta días."

No hay duda de que cuando los esposos cumplen con su deber legal y tienen ingresos separados, a ellos corresponde la elección. La hay a nuestro juicio no sólo cuando se deja de hacer la elección por los esposos en tiempo, si que cuando se trata de bienes gananciales aunque la declaración se presentare dentro de él porque separar los ingresos cada año envuelve en cierto modo una liquidación de la sociedad de gananciales y ésta en verdad no se liquida sino cuando finalmente se disuelve.

Como se dijo por la Corte Suprema de los Estados Unidos por medio de su entonces Juez Asociado Sr. White, en el caso de *Garrozi* v. *Dastas*, 204 U. S. 64, 79:

" 'Los derechos de la esposa permanecen inactivos durante el matrimonio ya que el marido está encargado de velar y dirigir los asuntos de la sociedad conyugal. Pero este derecho que permanece inerte, en tanto esté el marido a la cabeza de los asuntos de la comunidad, se torna activo cuando la autoridad conyugal deja de existir.' . . . . Troplong, Contract de Mariage, vol. 2, pág. 136, núm. 855.

"Bajo la ley de Francia, con anterioridad al Código de Napoleón, el poder del marido sobre los bienes de la comunidad alcanzaba tal

magnitud, que se consideraba, en teoría, que los derechos de la esposa no sólo estaban inertes durante el matrimonio, si que eran totalmente inexistentes. En otras palabras, se sostenía la doctrina que la mujer durante el matrimonio tenía una mera expectativa, y por tanto que no gozaba de interés alguno en las propiedades o bienes de la comunidad hasta la disolución de la sociedad. Dumoulin, Sur. l'art. 25, Cout. de Paris. Y de esto surgió la expresión que la comunidad era una sociedad que sólo empezaba con su terminación. Sin embargo, como consecuencia del derecho conferido a la esposa por ciertas costumbres francesas anteriores al Código de Napoleón, y también expresamente otorgado por dicho código (1443 et seq.), a obtener una orden disolviendo la comunidad en aquellos casos en que los asuntos del marido estaban en tal desorden que seriamente amenazaban los derechos de la esposa, es la doctrina generalmente aceptada bajo el Código de Napoleón, que el interés de la esposa con anterioridad a la disolución del matrimonio subsiste, aún cuando permanezca inerte.''

Y como se expresó esta propia Corte Suprema, por medio de su Juez Asociado Sr. Texidor, en *Ramos González & Co. v. Registrador,* 41 D.P.R. 58, 61:

''El Código Civil de Puerto Rico, ha estatuído que la sociedad de gananciales empieza precisamente en el día de la celebración del matrimonio; y se extingue a la disolución del mismo. Por ella se adquieren derechos y se constituye la entidad en responsabilidades; y si bien éstas tienen una solución definitiva y matemática tanto mientras existe la sociedad como a su disolución, aquéllos no tienen, mientras el matrimonio subsiste, una realización práctica como la de que cada socio tenga una parte fija y determinada durante la existencia de la sociedad. Así se ve del código, que mientras en los artículos 1323 a 1326, inclusives, establecen las responsabilidades que pueden tener una inmediata solución, deudas y obligaciones contraídas por el matrimonio, réditos y atrasos, reparaciones de bienes, alimentos y educación de la prole, y otras, en el artículo 1310, capital en lo que a la naturaleza de la sociedad se refiere, se emplean el futuro 'harán suyos' y la condición 'al disolverse el matrimonio.' El artículo dice:

'' 'Artículo 1310.—Mediante la sociedad de gananciales, el marido y la mujer harán suyos por mitad, al disolverse el matrimonio, las ganancias o beneficios obtenidos indistintamente por cualquiera de los cónyuges durante el mismo matrimonio.'

"Los bienes gananciales, mientras el matrimonio existe y subsiste, pertenecen a la comunidad conyugal. Sólo cuando el matrimonio se disuelve podrán fijarse las mitades de que habla la ley; antes, no; que la voluntad de los cónyuges no puede romper el mandato y la creación de la ley. Y en esta escritura, lo primero que hacen estos cónyuges es adelantar un futuro al que ellos no pueden alcanzar, y considerar como de hecho lo que no es más que un derecho *in potentia*. Y así se dan por dueños cada uno de una mitad de las fincas, y sobre esto basan su aportación."

Sin embargo, como se trata de una ley sobre contribuciones que debe interpretarse en el sentido más favorable al contribuyente, nos inclinamos a resolver que es aplicable a Puerto Rico la regla sentada para estados de la Unión en que también existe la sociedad de gananciales en forma igual o similar a la nuestra, tal como se expone en la obra de Paul and Mertens, Law of Federal Income Taxation, a saber:

"No obstante el derecho a elección que le confiere el estatuto al marido y a la mujer habilitándolos para elegir el presentar una planilla conjunta, marido y mujer son, si no ejercitan ese derecho a elección, dos contribuyentes separados..." (Vol. 4, pág. 540, sec. 39.09.)

"La Corte Suprema de Estados Unidos ha decidido que cada cónyuge, en Arizona, Luisiana, Tejas y Wáshington, puede presentar planillas individuales incluyendo la mitad de los ingresos de la sociedad de gananciales. Se dijo que bajo las leyes de esos estados la mujer tenía un interés actual adquirido (present vested right) igual al del esposo en los bienes de la sociedad, y que, por lo tanto, la contribución sobre la mitad de los ingresos debía imponerse a ella. El Departamento de Hacienda promulgó esta misma regla para Idaho, Nevada, y Nuevo Méjico, basándose en las decisiones de la Corte Suprema. . . . La Corte Suprema ha puesto de acuerdo la regla de California con la regla general en los otros estados, así que cada cónyuge residente en California puede preparar una planilla incluyendo la mitad de los ingresos de la sociedad de gananciales después de julio 29, 1927. . . . ." (Vol. 2, pág. 57, sec. 16.03.)

Y adoptado ese criterio para cuando se presenta la declaración en tiempo, creemos que lógicamente debe aplicarse, si en ello insiste la parte interesada, después, como sucedió en

este caso. La dilación lleva consigo los recargos y penalidades que el legislador estimó apropiados y fijó expresamente en la ley y el que pudiera resultar de una declaración conjunta no está comprendido entre ellos.

El segundo error no fué cometido. El tercero y último se señala pero no se discute en el alegato. Se refiere a la sentencia y comprende los dos anteriores.

*Debe revocarse la sentencia en cuanto declaró con lugar el reintegro de $201.27 cobrados por contribución sobre ingresos percibidos en 1918, y así modificada, confirmarse.*

El Juez Asociado Sr. Wolf está conforme excepto en cuanto a la revocación de la sentencia declarando con lugar el reintegro de $201.27 cobrados por contribución sobre ingresos percibidos en 1918 por estimar que dicho pronunciamiento debe ser también confirmado.

El Juez Asociado Sr. De Jesús no intervino.