GABRIEL REXACH GÓMEZ, demandante y recurrido, *v.* SECRETARIO DE HACIENDA, demandado y recurrente.

*Número:* R-68-53     *Resuelto:* 18 de febrero de 1969

914

*Rafael A. Rivera Cruz, Procurador General,* y *Lolita Miranda, Procuradora General Auxiliar,* abogados del recurrente; *McConnell, Kelley & Sifre* y *Ramón Morán Loubriel,* abogados del recurrido.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Prescribe la Sec. 51 (a) de la Ley de Contribución sobre Ingresos de 1954, 13 L.P.R.A. sec. 3051 (a), que rendirá una planilla en la que consten las partidas de ingreso bruto y las deducciones y créditos admitidos "(1) Todo individuo que sea soltero *o que sea casado pero que no viva con su cónyuge,* si tiene un ingreso bruto de más de $800 para el año contributivo; y (2) Todo individuo que sea casado y viva con su cónyuge, si tiene un ingreso bruto de más de $2,000 para el año contributivo." (Énfasis nuestro.) Com-

plementándola, la Sec. 51 (b) dispone que *"Si esposo y esposa viven juntos* y tienen un ingreso bruto agregado de más de $2,000 para el año contributivo, el ingreso total de ambos será incluido en una *planilla conjunta* y la contribución normal y la contribución adicional serán computadas sobre el ingreso agregado. *El ingreso bruto recibido por cualquiera de los cónyuges no será dividido entre ellos."* [1] (Énfasis nuestro.) La constitucionalidad de una disposición análoga, así como su aplicación retroactiva, fue sostenida en *Ballester v. Tribunal de Apelación,* 61 D.P.R. 474 (1943) conf. en 142 F.2d 11 (1st Cir. 1944); *certiorari* denegado en 323 U.S. 723 (1944).

El recurrido don Gabriel Rexach Gómez rindió planillas de ingresos para los años naturales 1957 y 1958 en las cuales hizo constar que estaba casado y vivía con su esposa doña Rosa M. Carrasquillo. Para el año natural 1959 rindió también planilla en la que hizo constar que estaba casado con su cónyuge mencionada, pero no vivía con y estaba separado de ésta. En este último año, a los fines de la determinación de la contribución, informó todos los ingresos de la sociedad de gananciales provenientes de distintas fuentes, tomó las deducciones permitidas y los créditos concedidos por la ley, y declaró la mitad del ingreso neto como su ingreso neto sujeto a tributación. La señora Carrasquillo no rindió plani-

---

[1] En términos similares se estatuye en la Sec. 58, incisos (a) y (c), 13 L.P.R.A. sec. 3058(a) y (c), la obligación de rendir por los individuos la declaración de contribución estimada, y en la Sec. 401(b), 13 L.P.R.A. sec. 3401(b), para la aplicación de la contribución alterna del Suplemento T.

Hasta la aprobación de la Ley Núm. 31 de 12 de abril de 1941 (Leyes, pág. 479)—con vigencia en 1 de enero de 1940—que enmendó la Sec. 24 de la Ley de Contribución sobre Ingresos de 1924, quedaba a opción de los cónyuges la rendición de planillas separadas o conjuntas. Véase el Art. 223 del Reglamento de la Ley de Contribución sobre Ingresos de 1924; y véanse además, *Casals v. Sancho Bonet, Tes.,* 53 D.P.R. 640 (1938); *Buscaglia, Tes.* v. *Tribunal de Apelación,* 62 D.P.R. 436 (1943); *Buscaglia, Tes.* v. *Tribl. Contribuciones,* 68 D.P.R. 777 (1948) y *Fiddler* v. *Tribl. Contribuciones,* 68 D.P.R. 847 (1948).

lla para el referido año. A los fines de una mejor comprensión de la controversia entre las partes ofrecemos a continuación un cuadro sinóptico con el desglose de los distintos conceptos del ingreso bruto ajustado según aparece de las declaraciones de ingresos rendidas por el contribuyente.

| Año Contributivo | Sueldos | Dividendos | Intereses | Ganancia Capital | Otros | Pérdida Agrícola | Ingreso Bruto Ajustado |
|---|---|---|---|---|---|---|---|
| 1957 | $36,000 | $9,250.00 | 16.83 | $6,218.75 | $2,000.00 | (1,143.18) | $52,342.40 |
| 1958 | 36,000 | 46,003.50 | | 8,694.67 | | (5,961.22) | 84,736.95 |
| 1959 | 36,000 | 63,458.95 | | 6,655.10 | | (22,270.05) | 83,844.00 |

Por sentencia de fecha 4 de abril de 1960 se decretó el divorcio entre don Gabriel Rexach y doña Rosa M. Carrasquillo. En la misma fecha suscribieron un contrato privado de partición de bienes en virtud del cual se liquidó la sociedad de gananciales.

Un examen de las declaraciones de ingresos del recurrido señor Rexach dio lugar a la notificación de deficiencias. Andando el tiempo se inició acción judicial por el contribuyente, y luego de una estipulación sobre ciertas partidas de aumentos al ingreso y procedencia de las deducciones reclamadas, la controversia quedó limitada a determinar si, en cuanto al año 1959, el Secretario de Hacienda había actuado correctamente al rechazar la "deducción" reclamada por el contribuyente de la mitad del ingreso neto como persona casada que vive separada de su cónyuge; y en cuanto a 1957 y 1958, a la procedencia de reintegros solicitados por haberse incluido en las planillas de esos años los ingresos totales de la sociedad de gananciales cuando, por vivir separado, sólo estaba obligado a incluir la mitad del ingreso neto tributable de la sociedad. [2]

---

[2] A pesar de que en las planillas de los años 1957 y 1958 el contribuyente hizo constar que estaba casado al finalizar el año contributivo y vivía con su cónyuge, en una estipulación presentada por las partes

Prevaleció el contribuyente. Revisamos el fallo del Tribunal Superior para considerar la cuestión básica sobre los ingresos que a tenor con la Sec. 51(a), *supra,* deben incluirse en sus planillas individuales por cónyuges que viven separados.

Sustenta el Secretario de Hacienda que la totalidad de los ingresos debe ser incluida por Rexach en sus declaraciones porque (a) la prueba demostró que éste tenía el control absoluto de los mismos y derivó exclusivamente su beneficio, ya que la señora Carrasquillo no derivó sueldos, y con excepción de la entrega de ciertas sumas para gastos personales, tampoco efectivamente recibió la participación de una mitad que le correspondía en las rentas y utilidades producidas por los activos del capital ganancial;(³) y, (b) por disposición de ley el marido es el administrador de la sociedad conyugal, Art. 91 del Código Civil, 31 L.P.R.A. sec. 284, y no teniendo la esposa un derecho adquirido, y sólo una mera expectativa o esperanza de participar en el activo líquido que pudiere resultar al disolverse la misma, *Berrocal* v. *Tribl. de Distrito,* 76 D.P.R. 38, 45 (1954); *National City Bank* v. *De la Torre,* 54 D.P.R. 233, 237 (1939); todo el producto de los bienes gananciales debe atribuírsele. Por su parte el contribuyente recurrido arguye que la situación

ante el tribunal de instancia se estableció que "Allá para el mes de enero de 1957 [los esposos Rexach-Carrasquillo] se separaron y continuaron separados hasta que se divorciaron el día 4 de abril de 1960 . . . ."

Sobre el efecto de una sentencia de divorcio por la causal de separación en la determinación de que los cónyuges estaban separados en ciertos años contributivos, véase, *Méndez* v. *Sec. de Hacienda,* 77 D.P.R. 84, 90 (1954).

(³) Conforme a la prueba en los años 1957 y 1958 del ingreso bruto ajustado de $48,661.00 y $49,793, el señor Rexach "entregó" a la señora Carrasquillo las sumas de $7,125 y $6,821.10. Retuvo, pues, $41,536 y $42,971.90. Como estas sumas no fueron satisfechas por "sentencia de sostenimiento separado", Sec. 22(k) de la Ley de Contribución sobre Ingresos de 1954, 13 L.P.R.A. sec. 3022(k), no son incluibles en el ingreso bruto de la esposa.

se rige por lo resuelto en *Méndez* v. *Sec. de Hacienda*, 77 D.P.R. 84, 96 (1954).

1.—Precisa reafirmar dos normas fundamentales para un mejor enfoque y entendimiento del problema básico envuelto en este recurso. La primera, anunciada en *Albanese* v. *Secretario de Hacienda*, 76 D.P.R. 324 (1954), que señala que debe acudirse a la Ley de Contribución sobre Ingresos para resolver los problemas sobre la responsabilidad contributiva de los cónyuges y no al Código Civil. Y la segunda, establecida en el citado caso normal de *Ballester*, supra, a la pág. 489, al efecto de que la disposición estatutaria que requiere la rendición de planilla separada o conjunta no establece "regla de propiedad alguna", y que meramente es "un método de declarar y calcular la contribución y [no] aumentó o disminuyó los derechos de propiedad sustantivos de las partes respectivas." Véase, *Serrallés Galiano* v. *Srio. de Hacienda*, 84 D.P.R. 11 (1961).

2.—Una vez aceptadas estas premisas básicas pierden decisiva trascendencia y significación el carácter de administrador de la sociedad de gananciales con que por ley está investido el marido y el control o beneficio inmediato que dentro de la organización familiar éste pueda haber ejercido sobre o recibido de los ingresos. Ni uno ni otro pueden ser determinantes. En verdad si los aceptáramos como concluyentes ello equivaldría a convertir en írrita la aplicación en la práctica de la disposición estatutaria que autoriza a los cónyuges que viven separados a rendir planillas individuales, ya que siempre habría que atribuir todos los ingresos al marido por su condición de administrador de la sociedad, forzándosele así en efecto a rendir una declaración conjunta. Otro tanto podría argüirse en la hipótesis de que el criterio determinante fuera el control o beneficio de los ingresos, salvo naturalmente la prueba en contrario.

*Méndez* v. *Sec. de Hacienda*, supra, no favorece la posición del contribuyente recurrido. Conforme surge de los

hechos que aparecen a las págs. 86 y 87, dentro de un incidente sobre aprobación de cómputos, se suscitó la responsabilidad de la señora Méndez Ríos por deficiencias notificadas en relación con declaraciones de ingresos presentadas por su anterior cónyuge señor Santisteban para años en que estaban casados, pero separados. El Secretario de Hacienda dividió el importe de las deficiencias entre ambos cónyuges por mitad; la contribuyente sostenía que la responsabilidad exclusiva era de su mencionado esposo, pues no se había liquidado aún la sociedad de gananciales. En el curso de la opinión se expresó que era innecesario considerar la naturaleza del derecho de la esposa antes de la disolución del vínculo matrimonial, bien caracterícese como un derecho adquirido, un derecho latente o una mera esperanza. Se añadió, a la pág. 95, que:

"Existiendo la obligación de cada cónyuge de radicar una planilla separada, debe suponerse que *las ganancias se* distribuyan por partes iguales entre ambos cónyuges. Precisamente, cuando existía en Puerto Rico, antes del 1940, y en done existe en otras jurisdicciones en que impera el sistema de bienes gananciales, el derecho opcional a presentar planillas separadas, la planilla individual de cada cónyuge debería contener la mitad de las *ganancias* de la sociedad de gananciales. Citas." (Énfasis nuestro.)

Obsérvese bien, sin embargo, que el anterior pronunciamiento se refiere cuidadosamente a *ganancias*, pero que ello no significa que los *ingresos*, irrespectivamente de su origen, deban ser distribuidos por mitad entre los cónyuges. Cualquier duda se disipa al considerar que las partidas envueltas en *Méndez* como ajustes al ingreso neto eran aumentos al ingreso bruto provenientes del beneficio obtenido en la expropiación y venta de inmuebles pertenecientes a la sociedad de gananciales. [4]

(4) Por no aparecer de los hechos expuestos en la opinión emitida en *Méndez*, señalamos que un examen del legajo de sentencia del recurso 11,012 (págs. 4 y 5) revela que para el año 1942 la deficiencia se originó

Para sostener su posición sobre la división irreductible por mitad de *todos* los ingresos de la sociedad a los fines de la rendición de planillas por cónyuges separados, el recurrido invoca también a *Casals* v. *Sancho Bonet, Tes.*, 53 D.P.R. 640 (1938). La cuestión no estuvo allí directamente envuelta, sino más bien la determinación de si la opción de rendir planilla conjunta o planillas separadas se extendía a la situación en que el Fisco la preparaba de oficio, por haberse omitido la presentación de una o las otras. Pero sea ello como fuere, la contribución impuesta al contribuyente fue a base de ingresos que consistían en cánones del subarriendo de una finca, intereses de un crédito y en la participación en los beneficios anuales en un negocio de comisiones, ([5]) y tanto, en cuanto a *ganancias*, según ocurre en *Méndez*, como en cuanto a esta clase de ingresos, no estamos en desacuerdo, como veremos, con que se incluyan por mitad en las planillas de cónyuges separados.

■ 3.—Considerado el problema en su aspecto fundamental como uno de carácter fiscal precisa adoptar aquella norma que tenga mayor arraigo en la realidad y responda mejor a los fines de la hacienda pública en concierto con un ordenado régimen económico familiar. Nada más propio que referirnos a la fuente de origen de los ingresos para lograr el resultado deseado. Y dentro de este marco lo razonable es permitir la distribución por mitad entre los cónyuges separados del ingreso derivado *directamente* de los activos o

por el aumento al ingreso en la suma de $5,899.23 del beneficio obtenido de la expropiación por Estados Unidos de América de tres parcelas de terreno sitas en Gurabo; y para el año 1944, de aumentos al ingreso de las suma de $10,755.80 del beneficio adicional obtenido en dicha expropiación en virtud la sentencia que fijó la compensación final, y $2,940, de la venta de un finca.

([5]) Legajo de Sentencia, págs. 8 y 24 del recurso de apelación Núm. 7402.

el capital(⁶) y requerir que el que proceda de la actividad personal individual de un cónyuge se incluya íntegramente por éste. Así, los intereses, dividendos, beneficios y los frutos, réditos y utilidades producidos o atribuibles al capital, serán incluibles en idéntica proporción, mientras los sueldos, salarios y compensaciones de cualquier índole por servicios personales prestados o por retribución en el ejercicio de una profesión, industria o negocio formarán parte del ingreso del cónyuge que los prestó.(⁷) Puede admitirse que la regla

(⁶) A estos fines, carece de importancia la distinción entre capital ganancial y privativo, visto el precepto contenido en el Art. 1301(3) del Código Civil, 31 L.P.R.A. sec. 3641, que incluye entre los bienes gananciales los frutos, rentas o intereses percibidos o devengados durante el matrimonio procedentes de los bienes peculiares de cada uno de los cónyuges. Para el caso de capitulaciones matrimoniales, véase, *Albanese* v. *Secretario de Hacienda,* 76 D.P.R. 324 (1954).

Debe tenerse claro, sin embargo, la diferencia entre esta situación y la del beneficio obtenido (a) en la disposición de bienes *inmuebles* privativos, *Gely* v. *Rodríguez,* 34 D.P.R. 522, 524 (1925), *Puente* v. *Pérez et al.,* 7 D.P.R. 186 (1904), y, (b) en la disposición de acciones, cuando el beneficio de capital obedece a causas naturales, o sea, la apreciación en valor de activos fijos existentes a la fecha del matrimonio, y no al diferimiento de ganancias o a la distribución de fondos de reservas que se han acumulado durante el matrimonio. Cfr. *Sucn. Santaella* v. *Srio. de Hacienda,* 96 D.P.R. 442 (1968).

(⁷) Una solución idéntica vaticinaba Mertens para los casos de cónyuges residentes en estados e n que imperaba el régimen económico de la sociedad de gananciales que permitía la distribución del ingreso en planillas separadas, pero desde 1948 en que se extendió a toda la nación el privilegio de la distribución de ingresos, esta cuestión es más bien académica. *Law of Federal Income Taxation,* vol. 3, Sec. 19.01 *et seq.;* véanse además, *The Tax Nationalization of Community Property,* 26 Taxes 14 (1948); *Federal Taxation of Community Property,* 34 Calif. L. Rev. 398–401 (1946); *Husband and Wife Under the Income Tax,* 5 Brooklyn L. Rev. 241 (1936); *Taxing the Income of the Husband and Wife,* 13 Taxes 198 (1935); *Federal Taxation of Community Property,* 12 Texas L. Rev. 273 (1934); *The Taxation of Family Income,* 41 Yale L.J. 1172 (1932); *The Modern Problem of the Nature of the Wife's Interest in Community Property—A Comparative Study,* 19 Calif. L. Rev. 567 (1931).

Resulta curiosa una disposición del Art. 223 del Reglamento de la Ley de Contribución sobre Ingresos de 1924 que establecía que "El marido deberá incluir en su planilla el ingreso derivado de servicios prestados por su esposa o de la venta de los productos de su trabajo *si ella no rinde una planilla separada* o una conjunta en la cual aparezcan separadamente sus ingresos."

que propugna como criterio determinante el control de los ingresos es más científica, pero las dificultades que envuelve para una fácil administración—por requerir prueba en cada caso particular—es un factor que milita poderosamente en contra de su adopción.

La disposición federal que permite a los cónyuges separados a rendir planillas individuales existe desde las primeras leyes de contribución sobre ingresos[8] en perfecta compatibilidad con el sistema en que la declaración individual constituía la forma típica para determinar la contribución. La declaración conjunta se permitió a los cónyuges *que vivían juntos*, en cada año natural, *a opción de éstos*. Paul y Mertens, *Law of Federal Income Taxation* (1934), vol. 4, § 39.06.[9] Cf. *Casals v. Sancho Bonet, Tes.*, supra. Pero un cónyuge separado, como contribuyente indivdual, no podía acogerse a la opción, y por ende, sólo venía obligado a incluir en su planilla sus propios ingresos. Con el mismo lenguaje se trasplantó a Puerto Rico desde 1924, y se ha conservado en forma inalterada en la actual ley básica de 1954.

En las escasas ocasiones en que situaciones similares fueron consideradas, la tendencia era a sostener que como la esposa tenía un derecho adquirido a la mitad de los ingresos en los estados en que existía el régimen económico de la sociedad de gananciales, ella debía incluir la mitad de los mismos en sus planillas individuales. *Bettie R. Funderburk Sparks*, 59, 156 P-H Memo T.C.; *Sherman* v. *Commissioner*

---

[8] La primera disposición aparece contenida en la Ley de Rentas Internas de 1918, Act of Feb. 24, 1919, ch. 18, § 223, 40 Stat. 1074. Desde esa fecha se conservó sustancialmente en la misma forma hasta 1944. 26 U.S.C.A., Internal Revenue Acts, 1924 to date, págs. 34, 180, 366, 500, 682, 843 y 1030.

[9] El efecto práctico de la opción era permitir a los cónyuges acogerse al sistema mediante el cual determinaban la contribución menor. Se utilizaba generalmente en aquellas ocasiones en que se lograba una reducción del ingreso bruto tributable mediante la deducción de una pérdida neta sufrida por uno de los cónyuges.

*of Internal Revenue,* 76 F.2d 810 (9th Cir. 1935). Se recurrió a una norma de derecho privado para aplicarla rígidamente y sin ulterior examen a una situación sobre responsabilidad contributiva, criterio que hemos expresamente descartado. Sin embargo, la última manifestación sobre el particular parece adoptar la regla sobre distribución del ingreso entre cónyuges separados que enunciamos en la presente opinión. *Knodle* v. *Warren,* 19 Am. Fed. Tax R.2d 582 (1966).

Aplicando la norma expuesta a los hechos de los autos en el ingreso bruto del contribuyente recurrido debe incluirse la totalidad del sueldo por él devengado y la mitad de las cantidades recibidas por concepto de dividendos, intereses y ganancias de capital en la disposición de bienes gananciales. Por supuesto que en igual proporción se conceden las deducciones relacionadas con la producción de las distintas partidas de ingresos, que sean admisibles conforme a la ley.

*Se dictará sentencia de conformidad.*